July 15, 2019

Level 3 Homes & Design, LLC
12055 NE Glenn Widing Dr., Suite 202
Portland, OR 97220
Attention: Jeremy Killian and Ryan Donato

Ladies and Gentlemen:

This letter (the "Agreement") constitutes an agreement by and between Franklin Capital Group, LLC (including its successors and assigns, "Lender"), and Level 3 Homes & Design LLC, an Oregon limited liability company (herein called "Company"), pertaining to certain loans and other credit which Lender has made or may from time to time hereafter make available to Company. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Promissory Note (Term Loan), dated as of the date hereof, made by Company to Lender (as it may be amended, restated, supplemented or otherwise modified from time to time, the "Term Note"), in respect of the term loan made to Company on the date hereof, in an aggregate principal amount equal to $1,600,000 (the "Term Loan").

In consideration of the Obligations and all present and future loans and credit from time to time made available by Lender to or in favor of Company, and in consideration of all present and future liabilities, obligations and indebtedness of Company to Lender, howsoever created, evidenced, existing or arising, whether direct or indirect, absolute or contingent, joint or several, now or hereafter existing or arising, or due or to become due, and all extensions and/or renewals thereof (herein collectively called the "Liabilities"), Company covenants and agrees as follows:

1. As used in this Agreement, the following terms shall have the following respective meanings set forth below:

"**Capital Expenditure**" shall mean any expenditure by a Person for (a) an asset which will be used in a year or years subsequent to the year in which the expenditure is made and which asset is properly classified in relevant financial statements of such Person as equipment, real property, a fixed asset or a similar type of capitalized asset in accordance with GAAP (as defined below), or (b) an asset relating to or acquired in connection with an acquired business, and (c) any and all acquisition costs related to (a) or (b) above.

"**Capital Securities**" shall mean shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest.

"**Consulting Engagement**" shall mean Company's engagement of Franklin Capital Management, LLC ("Franklin Management") as a consultant (the "Consulting Engagement") under that certain engagement letter, dated as of the date hereof, between Franklin Management and Company (or such other agreement evidencing such Consulting Engagement).

"**Corporate Guarantor**" shall mean any Guarantor that is not an Individual Guarantor.  As of the date hereof, the only Corporate Guarantors are (i) Heirloom and (ii) Level 3, LLC, an Oregon limited liability company.

"**Guaranty**" shall mean a guaranty in form and substance satisfactory to Lender pursuant to which a Person guaranties payment of all or any portion of the Liabilities.

"**Heirloom**" means Heirloom Inc, an Oregon corporation.

"**Individual Guarantor**" shall mean each Guarantor that is a natural person.  As of the date hereof, the Individual Guarantors are Jeremy Paul Killian and Ryan Michael Donato.

"**Key Man Life Insurance Policy**" shall mean a "key man life insurance policy" insuring the life of Jeremy Paul Killian, to be in the face amount of at least $1,600,000 (or such lesser amount as agreed by Lender in its sole discretion) to be obtained by Company and collaterally assigned to Lender within 30 days of the date hereof.

"**Loan Documents**" shall mean, collectively, this Letter Agreement, the Note, any other promissory notes evidencing other loans made by Lender to Company, any guaranties, mortgage, security agreement, any swap agreements, other interest rate protection agreements, derivative agreements, any certificates (including, for the avoidance of doubt, the Perfection Certificate, dated as of the date hereof and executed by Company and each of the Guarantors), and any other or document, instrument or agreement evidencing, securing or relating to this Agreement, together with any and all modifications and amendments to any of the foregoing.

"**Material Adverse Effect**" shall mean a material, adverse effect on (i) the business, property or condition (financial or otherwise) of Company, any subsidiary of Company or any Guarantor; (ii) Company's, any subsidiary's or any Guarantor's ability to perform its obligations hereunder or any other Loan Document to which it is a party, or (iii) the validity or enforceability of this Agreement or any other Loan Document.

"**Organizational Documents**" shall mean, with respect to any Person, its articles of incorporation, articles of organization, bylaws, operating agreement, partnership agreement, declaration of trust or other trust agreement, or such other applicable organizational documents, including all of the exhibits thereto.

2.    Each loan or other extension of credit made by Lender to or otherwise in favor of Company shall be evidenced by and subject to a promissory note or other agreement or evidence of indebtedness acceptable to Lender, and executed and delivered by Company unto Lender.

3.    Company represents and warrants to Lender, and such representations and warranties shall be deemed to be continuing representations and warranties during the entire life of this Agreement, and thereafter, so long as any Liabilities remain unpaid and outstanding:

(a)    <u>Organization and Existence</u>.

2

Exhibit 1
Page 2 of 17

(i)  As of the date hereof, Company's only subsidiary is Heirloom, and Heirloom has no subsidiaries.

(ii)  Company and each of its subsidiaries  (i) is duly organized, validly existing and in good standing as a corporation, general partnership, limited partnership or limited liability company, as applicable, under the laws of the state in which it is incorporated, organized, or formed; (ii) has all necessary power and authority and full legal right to own its property and to carry on its businesses; and (iii) has all necessary power and authority, and full legal right, to enter into this Agreement and each of the other Loan Documents to which it is a party, and to perform, observe and comply with all of its agreements and obligations under this Agreement and the other Loan Documents;

(iii)  Each Corporate Guarantor  (i) is duly organized, validly existing and in good standing as a corporation, general partnership, limited partnership or limited liability company, as applicable, under the laws of the state in which it is incorporated, organized, or formed; (ii) has all necessary power and authority and full legal right to own its property and to carry on its businesses; and (iii) has all necessary power and authority, and full legal right, to enter into this Agreement and each of the other Loan Documents to which it is a party, and to perform, observe and comply with all of its agreements and obligations under this Agreement and the other Loan Documents;

(iv)  Company and each Corporate Guarantor has provided Lender with true, correct and complete copies of its Organizational Documents.  All of the Organizational Documents are unmodified since the date delivered to Lender and are in full force and effect;

(b)  <u>Due Authorization</u>.

(i)  The execution and delivery by Company of this Agreement and the other Loan Documents to which Company is a party, the execution and delivery by each Corporate Guarantor of each of the Loan Documents to which it is a party, the performance by Company and each Corporate Guarantor of all of its agreements and obligations under such documents and the making of the borrowings contemplated by this Agreement have been duly authorized by all necessary action on the part of Company and such Corporate Guarantor , as applicable, and do not and will not (i) contravene any provision of its Organizational Documents; (ii) conflict with, or result in a breach of the terms, conditions or provisions of, or constitute a default under, or result in the creation of any lien (other than those in favor of Lender pursuant to the Loan Documents) upon any of its property under any agreement, indenture, mortgage or other instrument to which it is a party or by which it is bound or affected; (iii) violate or contravene any provision of any law, rule or regulation (including, without limitation, the

3

Exhibit 1
Page 3 of 17

Regulations of the Board of Governors of the Federal Reserve System) or any order, ruling or interpretation thereunder or any decree, order or judgment of any court or governmental or regulatory authority, bureau, agency or official binding on it; or (iv) require any waivers, consents or approvals by any of its creditors or trustees for its creditors.

(ii)    Each Corporate Guarantor (i) is duly organized, validly existing and in good standing as a corporation, general partnership, limited partnership or limited liability company or trust under the laws of the state in which it was organized; (ii) has all necessary power and authority and full legal right to own its property and to carry on its businesses; and (iii) has all necessary power and authority, and full legal right, to enter into each of the Loan Documents to which it is a party, and to perform, observe and comply with all of its agreements and obligations under each of the Loan Documents to which it is a party.

(iii)    Except as to matters which Company or a Corporate Guarantor has procured, obtained or performed prior to or concurrently with Company's execution and delivery of this Agreement, no approval, consent, order, authorization or license by, or giving notice to, or taking any other action with respect to, any governmental or regulatory authority or agency is required under any provision of any applicable law for (i) Company's execution and delivery of this Agreement and the other Loan Documents to which it is a party or Company's performance of its obligations under this Agreement and the other Loan Documents and the borrowings contemplated by this Agreement, (ii) the execution and delivery by any Guarantor of any Loan Documents to which it is a party or such Guarantor's performance of its obligations under such other Loan Documents, or (iii) the continuing legality, validity, binding effect, enforceability or admissibility in evidence of this Agreement and the other Loan Documents.

(c)    <u>Material Adverse Effect</u>. There are no actions, suits or proceedings pending or, to the actual knowledge of Company, threatened against Company, any subsidiary or any Guarantor, which could, if determined adversely to Company, such subsidiary or such Guarantor, reasonably be expected to have a Material Adverse Effect upon Company, such subsidiary or such Guarantor.

(d)    <u>Loan Documents</u>. Each Loan Document to which Company or any Guarantor is a party constitutes the legal, valid and binding obligation of Company and such Guarantor, enforceable against Company and such Guarantor in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency or similar laws generally affecting the enforcement of creditor's rights).

(e)    <u>No Default</u>. No event has occurred and is continuing, and no condition exists, which constitutes (or would, with the provision of notice or the passage of time, or both, constitute) an Event of Default.  Neither Company nor any Guarantor has

4

Detroit_16079099_5

Exhibit 1
Page 4 of 17

any right to rescind, cancel or terminate this Agreement or any other Loan Document.

(f) <u>Financial Statements</u>. All of the financial statements of Company, each subsidiary of Company, and each Guarantor delivered to Lender in connection with the transactions contemplated by the Loan Documents have been prepared in accordance with generally accepted accounting principles consistently applied ("GAAP"), and fairly present in all material respects the financial condition of Company, such subsidiary and such Guarantor as of the dates on which the same were prepared.   There are no material liabilities or obligations, secured or unsecured (whether accrued, absolute or actual, contingent or otherwise), not reflected in such financial statements, which, in accordance with GAAP, should have been reflected therein. From the date of the most recent financial statements provided to Lender until the date hereof, there has been no materially adverse change in the financial condition of Company, any subsidiary of Company or any Guarantor.

(g) <u>Tax Returns</u>. Each of Company and its subsidiaries, and each Guarantor has filed all federal, state and other tax returns required to be filed in respect of all taxing periods prior to the date of this Agreement (or has been granted extensions with respect to same), and has paid or made reasonable provision, in accordance with applicable laws for the payment of all taxes (if any) which have or may become due and payable pursuant to any such returns (or pursuant to any matters raised by audits).  Each of Company, each of its subsidiaries and each Guarantor has paid or caused to be paid all real and personal property taxes and assessments and other governmental charges lawfully levied or imposed on or against Company, such subsidiary or Guarantor or its property (other than those presently payable without payment of interest or penalty and those which are subject to contests initiated in good faith and diligently prosecuted and as to which adequate reserves have been provided).

(h) <u>Solvency</u>. Company does not intend to, and does not believe that it will, incur debts beyond its ability to pay as they mature, taking into account the timing of and amounts of cash to be received by it and the timing of the amounts of cash to be payable on or in respect of its indebtedness.  Company is solvent, and, giving effect to the closing of the transactions contemplated by this Agreement and the disbursement of the proceeds of any loans from Lender, shall remain solvent.

(i) <u>Encumbrances</u>. There are no security interests in, or liens, mortgages, or other encumbrances on, any of Company's or any Guarantor's property or assets, except Permitted Liens (as defined below).

4.     So long as Lender shall have any commitment or obligation, if any, to make or extend loans, advances or other credit to or in favor of Company, and so long as any Liabilities remain unpaid and/or outstanding, Company covenants and agrees that it shall and it shall cause each of its subsidiaries, each Corporate Guarantor and each of its subsidiaries to:

Detroit_16079099_5

Exhibit 1
Page 5 of 17

(a)  Furnish to Lender, or cause to be furnished to Lender, in each case, in form and detail and on a reporting basis satisfactory to Lender, the following:

(i)  as soon as available, and in any event not later than 60 days after and as of the end of each fiscal year of Company, consolidated and consolidating financial statements of Company and its consolidated subsidiaries for and as of the end of each such fiscal year, containing the consolidated and consolidating balance sheets of Company and its consolidated subsidiaries as of the close of each such fiscal year, consolidated and consolidating statements of income and retained earnings and a statement of cash flows of Company and its consolidated subsidiaries for each such fiscal year, and such other comments and financial details as are usually included in similar reports. Such financial statements shall be prepared in accordance with GAAP, shall be in such detail as Lender may reasonably require, and shall be audited by independent certified public accountants of recognized standing selected by Company and acceptable to Lender;

(ii)  as soon as available, and in any event not later than 15 days after and as of the end of each month of each fiscal year of Company (or, in the case of the month ending July 31, 2019, by August 1, 2019), consolidated and consolidating financial statements of Company and its consolidated subsidiaries, containing the balance sheet of Company and its consolidated subsidiaries as of the end of each such month, consolidated and consolidating statements of income and retained earning and a statement of cash flows for Company and its consolidated subsidiaries for such month and for the portion of the fiscal year of Company through the end of the month then ending, and such other comments and financial details as are usually included in similar reports. Such financial statements shall be prepared in accordance with GAAP, shall be satisfactory to Lender in its sole discretion, and shall be certified as to accuracy and fairness by the chief executive or chief financial officer of Company (or, if none exists, such other officer with similar duties and responsibilities and familiarity with Company's finances and operations);

(iii)  simultaneous with the delivery to Lender of the respective financial statements required in sub-sections (i) and (ii) above, a compliance certificate in form and detail satisfactory to Lender, certified by the chief financial officer of such Company, certifying that, as of the date thereof, to the best of each such person's knowledge, no Default or Event of Default shall have occurred and be continuing or exist, or if any Default or Event of Default shall have occurred and be continuing or exist, specifying, in detail, the nature and period of existence thereof and any action taken or proposed to be taken by Companies in respect thereof;

(iv)  as soon as available, and in any event within 15 days after and as of the end of each month, agings of Company's and its subsidiaries' accounts receivable and accounts payable and an inventory report of Company and

6

Exhibit 1
Page 6 of 17

its subsidiaries for and as of the end of each such month, each in form satisfactory to Lender, certified by a duly authorized member of Company and its subsidiaries;

(v)     (a) within 15 days after filing, the federal income tax returns for Company and each of its consolidated subsidiaries, including all schedules thereto and (b) within 15 days after filing, the federal payroll tax returns for Company and each of its consolidated subsidiaries, including all schedules thereto;

(vi)    within 15 days after and as of the end of each month of each fiscal year of Company, statements for each bank account maintained by Company;

(vii)   (A) as soon as available, and in any event within 60 after each year, a personal financial statement for each Individual Guarantor as of the last day of the preceding year, in form acceptable to Lender and certified by such Individual Guarantor as to the accuracy and completeness, and (B) within 10 days of filing, a copy of each Individual Guarantor's federal income tax return, including all schedules thereto; and

(viii)  promptly, at such times as Lender may reasonably require, in form and detail satisfactory to Lender, such other information and reports as may be required under the terms of any Loan Documents or as Lender may reasonably request from time to time.

(b)     Promptly inform Lender of the occurrence of any Event of Default, or any condition or event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default (any such condition or event, a "Default"), under any of the Liabilities or Loan Documents, and of any condition or event which has had or could have a material adverse effect upon Company's business, properties, financial condition or its ability to observe, perform or comply with its liabilities and obligations hereunder or otherwise in respect of any of the Liabilities or the Loan Documents.

(c)     (i) Keep proper books of record and account in which full and correct entries shall be made of all of its financial transactions and its assets and businesses so as to permit the presentation of financial statements (including, without limitation, those financial statements to be delivered to Lender pursuant to Section 4(a) above) prepared in accordance with GAAP; provided that (x) Lender, in its sole discretion, may require Company to employ a certified public accountant acceptable to Lender to maintain such books and records and (y) within 90 days from the date of this Agreement, such books and records shall be maintained in QuickBooks Online and (ii) permit Lender, or its attorneys, accountants or other representatives, upon reasonable advance notice (unless a Default or Event of Default has occurred and is continuing, in which case such notice shall not be required), to visit all of Company's and each of its consolidated subsidiaries' offices and to make inquiries as to Company's and such subsidiary's financial

7

Detroit_16079099_5

Exhibit 1
Page 7 of 17

matters with their respective directors, members, managers, officers, employees, and independent certified public accountants; and permit Lender, or its attorneys, accountants or other representatives, to inspect, audit and examine Company's and each of its respective consolidated subsidiaries' books, accounts, records, ledgers and assets and properties of every kind and description, wherever located (including, for the avoidance, as maintained in QuickBooks Online), at all reasonable times. Company shall reimburse Lender for all reasonable costs and expenses incurred by Lender in connection with such inspections, examinations and audits, and to pay to Lender such fees as Lender may reasonably charge in respect of such inspections, examinations and audits (including, for the avoidance of doubt, in connection with any assistance Lender may provide in order to comply with Section 4(a)), or as otherwise mutually agreed upon by Company and Lender.

(d)   Maintain insurance of the type and in the manner set forth in Section 4(k) of the Continuing Security Agreement, dated as of the date hereof, between Company and Lender and the other debtors party thereto from time to time.

(e)   Preserve and maintain its existence and all of its rights, franchises and privileges.

(f)   Comply with all applicable laws, and will promptly notify Lender in the event that Company or any of their respective subsidiaries receives any notice, claim or demand from any governmental authority asserting the violation of any applicable legal requirement which could reasonably be expected to have a material adverse effect upon Company or any of its subsidiaries.

(g)   Obtain all such approvals, consents, orders, authorizations and licenses from, give all such notices promptly to, register, enroll or file all such agreements, instruments or documents promptly with, and promptly take all such other action with respect to, any governmental authority, regulatory agency or official or any central bank or other fiscal or monetary authority, agency or official, as may be required from time to time under any provision of any applicable law:

   (i)    for the performance by Company, such Corporate Guarantor or such subsidiary of any of its agreements or obligations under the Term Note, this Agreement or any other Loan Document to which it is a party or for the payment by Company, such Corporate Guarantor or such subsidiary to Lender of any sums which shall become due and payable by it thereunder;

   (ii)   to ensure the continuing legality, validity, binding effect or enforceability of the Term Note or any other Loan Document;

   (iii)  to continue the proper operation of the business and operations of Company, each Corporate Guarantor and each of their respective subsidiaries.

(h)   (i) Cause any newly formed or acquired direct or indirect subsidiary to (x) become a Guarantor and (y) cause Lender to have a first priority security interest

8

Detroit_16079099_5

Exhibit 1
Page 8 of 17

in all of its assets, and take all such actions requested by Lender in order to perfect Lender's security interest therein and (ii) without limiting the foregoing clause (i), execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all further assurances reasonably requested by Lender from time to time in order to give full effect to any of the Loan Documents.

(i)     Use the proceeds of any loans from Lender only for (i) working capital, (ii) general corporate purposes, (iii) the payments of costs, fees and expenses in connection with this Agreement, the other Loan Documents, and the Consulting Engagement and (iv) the repayment or consolidation of certain indebtedness for borrowed money or other financing obligations of Company existing prior to the date of this Agreement, including but not limited to bank financings and merchant advance obligations (in each case in this clause (iv) which may have been acquired by Lender from the provider of such financing arrangement).

(j)     (i) Keep its assets, whether now owned or hereafter acquired, free of any lien, charge or claim (other than the (x) liens for taxes or assessments or governmental charges or levies not yet due or delinquent, or which can thereafter be paid without penalty, or which are being contested in good faith by proceedings diligently pursued, (y) any other lien, encumbrance or charge acceptable to and approved in writing by Lender and (z) the liens and encumbrances arising under the Loan Documents (collectively, "Permitted Liens")); and (ii) not encumber its assets, whether now owned or hereafter acquired, or any portion thereof or interest therein, permit any lien, levy, attachment or restraint to be made or filed against its assets, whether now owned or hereafter acquired, or any portion thereof or interest therein or permit any receiver or assignee for the benefit of creditors to be appointed to take possession of its assets, whether now owned or hereafter acquired, or any portion thereof.

(k)     Deliver to Lender the following, each of which shall be in form and substance acceptable to Lender: (a) executed landlord waivers or other collateral access agreements with respect to all locations leased by Company or any Corporate Guarantor; and (b) executed bailee letters with respect to all locations at which Company stores any inventory or other assets.

(l)     Subject to the occurrence of any Default or Event of Default, and upon the written request of Lender, use commercially reasonable efforts to make such financial adjustments (including with respect to compensation and other budgetary matters) that Lender believes in good faith will improve the overall financial stability of the Company and its subsidiaries as a whole.

(m)     (i) Maintain all of its bank accounts with a bank that has entered into a control agreement with Lender with respect to such accounts in form and substance satisfactory to Lender and (ii) permit Lender to have "view access" to each of its bank accounts.

9

Exhibit 1
Page 9 of 17

(n)     (i) Utilize ADP (or such other payroll service vendor satisfactory to Lender in its sole discretion) for the purposes of managing payroll and withholding taxes, (ii) promptly upon receipt, furnish to Lender payroll reports from such payroll service vendor evidencing current payment (or deposit, as the case may be) of all employer and employee withholding taxes and assessments and (iii) take such actions as may be required by ADP (or such other satisfactory payroll service) in order to authorize Lender to have full access to all reports and other information that such vendor makes available to Company or such Corporate Guarantor.

(o)     With respect to Company only, hire a chief executive officer or chief financial officer reasonably acceptable to Lender within 90 days of the date hereof, which officer shall (x) have such duties and responsibilities typical of such office and (y) receive aggregate compensation reasonably acceptable to Lender.

(p)     With respect to Company only, if requested by Lender, request inforce illustrations with respect to the Key Man Life Insurance Policy from an insurance company satisfactory to Lender, and deliver such illustrations to Lender promptly upon receipt thereof.

(q)     Maintain the Key Man Life Insurance Policy in full force and effect.

(r)     With respect to Company only, within one business day of receipt by Company of the proceeds of the Term Loan, use a portion of the proceeds of the Term Loan as specified under the heading "Paid out of Proceeds by Company" in the Closing Statement and Authorization dated as of the date hereof (if any) and executed by Company (the "Closing Statement").

5.      So long as Lender shall have any commitment or obligation, if any, to make or extend loans, advances or other credit to or in favor of Company, and so long as any Liabilities remain unpaid and/or outstanding, Company covenants and agrees that it shall not and it shall not permit any of its subsidiaries or any Corporate Guarantor or any of its subsidiaries to:

(a)     Modify, amend or terminate any of its Organizational Documents, or permit any of its Organizational Documents to be modified, amended or terminated, without the prior written consent of Lender. Lender's consent to any such modification, amendment or termination shall not be unreasonably withheld, provided (a) that there shall be no Default or Event of Default at the time of Company's request for such consent, and (b) the proposed modification, amendment or termination does not (with the provision of notice or the passage of time, or both) violate any provision of any Loan Document.

(b)     Directly or indirectly (i) except in the ordinary course of business, sell, transfer, lease, assign or otherwise dispose of all or any portion of its assets or any interest therein; (ii) except for Permitted Liens, encumber, hypothecate, create a security interest or create or permit any lien upon or affecting its assets or any portion thereof or interest therein; (iii) assign, transfer or encumber any interest of Company or any of its subsidiaries under this Agreement or under any other Loan

Detroit_16079099_5

Exhibit 1
Page 10 of 17

Document; (iv) purchase, acquire, issue or redeem any of its Capital Securities or make any material change in its capital structure; (v) change its name, consolidate with or merge into any other Person or permit any other Person to merge into it; or (vi) enter into any sale-leaseback transaction.

(c)     Directly or indirectly, become or remain obligated for any indebtedness for borrowed money, or for any indebtedness incurred in connection with the acquisition of any property, real or personal, tangible or intangible, except: (i) indebtedness to Lender and (ii) current unsecured trade payables and accrued liabilities arising in the ordinary course of its business.

(d)     Directly or indirectly, (i) make any loan, investment, advance or extension of credit to any Person, (ii) purchase, create or acquire all or substantially all of the properties or assets of any other Person or any Capital Securities of any other Person, (iii) incur any obligation as surety or guarantor, other than in the ordinary course of business, (iv) enter into any transaction with an affiliate that is not on an arms' length basis or otherwise on terms and conditions as favorable to Company as would be obtainable in a transaction with a Person that is not an affiliate or (v) subordinate any indebtedness due it from any Person to indebtedness of other creditors of such Person.

(e)     Pay any dividends or make any other distributions (whether in cash, securities or other property)  with respect to any of its Capital Securities, including but not limited to repayment of any loans made by any of its members or shareholders, return of capital contributions, distributions upon termination, liquidation or dissolution, or any development, property management, accounting or other fees payable to any of its members or shareholders; provided that (i) Company and any Corporate Guarantor may pay cash dividends or distributions to its shareholders, partners or members, as applicable, from time to time during a year to the extent necessary to enable such shareholders, partners, or members to pay income taxes for such year and make estimated income tax payments to satisfy their liabilities under federal and state income tax law for such year which arise solely from such shareholders', partners', members', status as a shareholder, partner, or member, as applicable, of Company and (ii) any of Company's subsidiaries or any Corporate Guarantor's subsidiaries may make any such dividends or other distributions to Company or such Corporate Guarantor, as applicable.

(f)     Terminate the Consulting Engagement or otherwise breach its obligations with respect thereto.

(g)     Make or incur any (i) Capital Expenditures other than in the ordinary course of business, or as Lender may otherwise agree in writing or (ii) other expenditure that is not, in the good faith judgment of Company, reasonably necessary for the purpose of carrying out its business or the business of its subsidiaries (as applicable), or that would otherwise impede Company's or any Corporate Guarantor's ability to perform its obligations hereunder or under any other Loan Document to which it is a party.

Detroit_16079099_5

Exhibit 1
Page 11 of 17

(h)     Make any payment of wages, salary, bonus or other compensation to any of Company's or any Corporate Guarantor's equityholders, officers, directors, managers, or their respective family members or affiliates in excess of $200,000 in the aggregate in any fiscal year of Company, or such greater amount as agreed in writing by Lender in its reasonable discretion.

6.      Expenses; Taxes; Indemnity.

(a)     Company hereby agrees to pay all stamp, document, transfer, recording, filing, registration, search, sales and excise fees and taxes and all similar impositions (excluding taxes on the overall net income or gross receipts of Lender) now or hereafter determined by Lender to be payable in connection with this Agreement or any other Loan Document or any other documents, instruments or transactions pursuant to or in connection herewith or therewith, and Company agrees to save Lender harmless from and against any and all present or future claims, liabilities or losses with respect to or resulting from any omission to pay or delay in paying any such fees, taxes or impositions.

(b)     Company hereby agrees to reimburse and indemnify Lender, its affiliates and their respective investors, officers, directors, employees, advisors and agents (collectively, the "Indemnified Parties") from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including, without limitation, the fees and disbursements of counsel for such Indemnified Party in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnified Party shall be designated a party thereto) that may at any time be imposed on, asserted against or incurred by such Indemnified Party as a result of, or arising out of, or in any way related to or by reason of, this Agreement or any other Loan Document or any transaction from time to time contemplated hereby or thereby, but excluding any such losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements resulting solely from the gross negligence or willful misconduct of such Indemnified Party, as finally determined by a court of competent jurisdiction.

7.      Company shall pay Lender a commitment fee in an aggregate principal amount equal to 2.75% of the Term Loan, which fee shall be earned, due and payable upon the making of the Term Loan, and paid to Lender by deducting such amount from the total Term Loan proceeds advanced to Company.

8.      (a) Company and/or certain of its subsidiaries or affiliates have certain existing indebtedness owing to third parties (collectively, the "Third Parties") for borrowed money or other financing obligations, including but not limited to bank financings and merchant advance obligations (the "Existing Indebtedness"). Company acknowledges and agrees that: (i) the amount of the Existing Indebtedness is accurately reflected on the Closing Statement and is due and owing without setoff or defenses of any kind; (ii) Lender may purchase (or may have purchased) all or any portion of the Existing Indebtedness from the Third Parties at a discount (a

12

Detroit_16079099_5

Exhibit 1
Page 12 of 17

"Purchase Discount") and may enforce such Existing Indebtedness at par; (iii) any portion of the Existing Indebtedness purchased by Lender shall be consolidated into and shall constitute part of the Term Loan on a dollar for dollar basis based on the par value of such Existing Indebtedness and shall, together with any Withheld Proceeds (as defined below) reduce the cash proceeds of the Term Loan otherwise available for disbursement; provided that, Lender may, in its sole discretion, elect to consolidate such purchased Existing Indebtedness into the Term Loan on a less than dollar for dollar basis; (iv) Lender has no further obligations to Company with respect to the Existing Indebtedness; and (v) any portion of the Existing Indebtedness not purchased by Lender (as determined by Lender in its sole discretion) must be paid in full either: (x) upon closing of the Term Loan, in which case a portion of the Term Loan proceeds may be disbursed directly to pay such portion of the Existing Indebtedness or (y) at such later date as Lender may determine in its sole discretion, in which case Lender may withhold proceeds of the Term Loan (the "Withheld Proceeds") in order to satisfy the Existing Indebtedness not so prepaid ("Unpaid Existing Indebtedness") in the future. Company acknowledges and agrees that as of the date hereof, there is Unpaid Existing Indebtedness owing to each of Last Chance Funding Inc., 1 Global Capital, LLC and Trenen Capital, Inc., and the total Withheld Proceeds in connection therewith is $50,000.

(b) Company also acknowledges and agrees that Lender may have been able to (or, with respect to Unpaid Existing Indebtedness, may be able to) negotiate, on behalf of Company, with the providers of certain of the Existing Indebtedness for the repayment of such Existing Indebtedness in an amount below the par value of such Existing Indebtedness (such difference, the "Repayment Discount"). In consideration of Lender making the Term Loan, Company agrees that 100% of such Repayment Discount shall be, in such amounts as directed by Lender in its sole discretion, either (1) paid to Lender for its own account (which such payment shall not reduce the principal amount of the Term Loan or any of the Liabilities) or (2) deposited into the Cash Collateral Account for application to future regularly scheduled payments due in respect of the Term Note and the Consulting Engagement (or for other purposes acceptable to Lender in its sole discretion). The Repayment Discount shall be distributed in accordance with the preceding sentence either (i) directly out of the proceeds of the Term Loan when made or (ii) with respect to any Unpaid Existing Indebtedness, out of the Withheld Proceeds not used by Lender for the repayment of such Unpaid Existing Indebtedness.

9. Without in any way whatsoever limiting or affecting Lender's right to make demand for payment of all or any part of any of the Liabilities which may, at any time, be payable upon demand, Company hereby acknowledges and agrees that, in addition to any and all other provisions set forth in any of the Loan Documents relating to any Default or Event of Default thereunder, an Event of Default shall also occur under the Liabilities and the Loan Documents in the event that there shall be any change, for any reason whatsoever, in (i) the management of Company, which could, in the sole discretion and judgment of Lender, have a material adverse effect upon Company and/or its ability to pay or perform any of its liabilities or obligations in respect of the Liabilities and the Loan Documents or (ii) the ownership or control of Company.

10. A portion of the Term Loan in an aggregate principal amount equal to $128,380.52 shall be disbursed into a cash collateral account in the name of Lender (or such other Person as directed by Lender) (the "Cash Collateral Account), which amount represents the

Detroit_16079099_5

Exhibit 1
Page 13 of 17

aggregate amount of regularly scheduled payments due in respect of the Term Note and the Consulting Engagement on each of August 15, 2019 and September 15, 2019. Company hereby authorizes Lender to apply such amounts as required under the Term Note and the Consulting Engagement when due.

11.     Any failure by Company to fully observe, perform or otherwise comply with any of the covenants or agreements of Company set forth in this Agreement shall constitute an Event of Default under the Liabilities and the Loan Documents, and Lender shall be entitled to exercise any and all rights and remedies available to or otherwise conferred upon Lender as a result thereof, whether by agreement, by law or otherwise.

12.     **Company hereby acknowledges and agrees that Company's compliance with the terms and conditions set forth herein, and the absence of any Default or Event of Default by Company in the observance or performance of any of the covenants or agreements of Company hereunder, shall not in any way limit, restrict or otherwise affect or impair Lender's right or ability to make demand for payment of any or all of the Liabilities which may be on a demand basis at any time in Lender's sole and absolute discretion, with or without reason or cause, and the existence of any Default or Event of Default hereunder shall not be the sole reason or basis for enabling Lender to make demand for payment of all or any part of such Liabilities.**

13.     All accounting terms not specifically defined in this Agreement shall be determined and construed in accordance with GAAP.

14.     No forbearance on the part of Lender in enforcing any of its rights or remedies under this Agreement or any other Loan Document, nor any renewal, extension or rearrangement of any payment or covenant to be made or performed by Company hereunder or any such other Loan Document, shall constitute a waiver of any of the terms of this Agreement or such Loan Document or of any such right or remedy.

15.     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Michigan. Company irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Agreement, and Company irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by Company related to this Agreement or the Loan Documents may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of Lender to bring any action or proceeding against Company in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

16.     Company agrees to pay to or reimburse Lender, upon demand, for all costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house or outside counsel) incurred by Lender in connection with the documentation, preparation, execution, delivery, amendment, administration and performance of this Agreement, the other Loan

Detroit_16079099_5

Exhibit 1
Page 14 of 17

Documents, and otherwise in respect of the Liabilities, and the consummation and the closing of the transactions contemplated hereby or thereby, any Default or Event of Default under or in respect of any of the Liabilities or in collecting or in attempting to collect any of the Liabilities, in perfecting, maintaining or defending any of Lender's liens or security interests (or the priority thereof), if any, in any collateral securing any part of any of the Liabilities, or otherwise in enforcing any of Lender's rights or remedies under any of the Loan Documents or otherwise in respect of any of the Liabilities. Company waives any rights to assert against Lender, any defense (legal or equitable), set-off, counterclaim, or claim which Company may now or at any time hereafter have against Lender or any other party liable to Lender or that may arise, directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Liabilities or any security therefor.

17.    This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns; provided, however, that Company shall not assign or transfer any of its rights or obligations hereunder or otherwise in respect of any of the Liabilities without the prior written consent of Lender. Company acknowledges that Lender may, at any time, assign its rights under this Agreement and any other Loan Document, including without limitation Lender's rights to payment and enforcement of the Liabilities.

18.    Company acknowledges that Lender, its investors, principals and/or affiliates may be (a) providing debt financing, equity capital or other services (including financial advisory or consulting services) to other companies in respect of which Company and its subsidiaries may have conflicting interests regarding the transactions described herein or otherwise or (b) engaged in a broad range of transactions (including providing merchant cash advances or merchant consumer financing) that may involve interests that differ from the interests of Company and its subsidiaries. Without limiting the foregoing, certain providers of merchant cash advances (including providers who may have provided merchant cash advances to the Company), or their principals, may be referral sources to Lender and may also be investors in Lender or an affiliate of Lender. Company further acknowledges that neither Lender, its investors, principals and/or affiliates have any obligation to disclose such interests and transactions to Company or its subsidiaries by virtue of any fiduciary, advisory or agency relationship, and Company and its subsidiaries waive, to the fullest extent permitted by law, any actual or alleged conflict of interest, and any claims they may have against, Lender, its investors, principals and/or affiliates, for breach of fiduciary duty or alleged breach of fiduciary duty, and agree that Lender, its investors, principals and or affiliates shall have no liability (whether direct or indirect) to Company and its subsidiaries in respect of such a conflict of interest or fiduciary duty claim, or to any person alleging a conflict of interest or asserting a fiduciary duty claim on behalf of or in right of Company and its subsidiaries, including any stockholders, employees or creditors. Company further acknowledges that Lender is not a fiduciary of Company or any of its subsidiaries.

19.    Company hereby releases Lender, Franklin Management, their respective affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities, of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "Released Matters"). Without limiting the generality of the foregoing, Company hereby

15

Exhibit 1
Page 15 of 17

waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released.  Company acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.  If Company asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the foregoing release or challenges the enforceability of the foregoing release (in each case, a "Violation"), then Company  agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

20.    COMPANY AND LENDER ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED.  EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE LIABILITIES.

[Remainder of Page Intentionally Left Blank]

Detroit_16079099_5

Exhibit 1
Page 16 of 17

If the foregoing is acceptable to Company, please indicate such with the signature(s) of Company as provided below.

Very truly yours,

FRANKLIN CAPITAL GROUP, LLC

By:_____

    Name:  Shaya Baum
    Title:  Partner

ACCEPTED, ACKNOWLEDGED
AND AGREED:

**LEVEL 3 HOMES & DESIGN, LLC**

By:_____
    Name: Jeremy Killian
    Title: Member

By:_____
    Name: Ryan Donato
    Title: Member

# PROMISSORY NOTE
## (Term Loan)

$1,600,000

Maturity Date: July 15, 2022                                          Dated:  July 15, 2019

**FOR VALUE RECEIVED,** on or before the Maturity Date stated above "Maturity Date"), the undersigned ("Borrower") promises to pay to the order of Franklin Capital Group, LLC (including its successors and assigns, "Lender"), at its offices located at 32300 Northwestern Hwy, Farmington Hills, Michigan 48334, or at such other place as Lender may designate in writing, the principal sum of One Million Six Hundred Thousand Dollars ($1,600,000), plus interest as hereinafter provided, in lawful money of the United States.

The unpaid principal balance outstanding from time to time under this Promissory Note (Term Loan) (this "Note") shall bear interest at twenty two percent (22.0%) per annum.  Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

This Note shall be repaid by consecutive monthly installments of principal and interest, each in the amount of Forty Four Thousand One Hundred Ninety and 26/100 Dollars ($44,190.26), commencing on August 15, 2019 and continuing on the 15th day of each month thereafter, with such monthly payments to be applied to accrued interest before principal and in the manner set forth on Schedule A hereto (as may be adjusted from time to time as necessary to reflect any prepayments).

The unpaid principal balance and all accrued interest thereon shall be due and payable in full on the Maturity Date (or earlier upon acceleration).  Amounts repaid may not be readvanced.

The sums advanced hereunder shall be charged to a loan account in Borrower's name on Lender's books (the "Loan Account"), and Lender shall credit to such account the amount of each repayment hereunder.  Lender shall render Borrower, from time to time, a statement of account setting forth the Borrower's loan balance in said Loan Account which shall be presumed to be correct and accepted by and binding upon Borrower, unless Lender receives a written statement of exceptions within ten (10) days after such statement has been rendered to Borrower. Such statement of account shall be prima facie evidence of the loan and amounts owing to Lender by Borrower hereunder.

Any payment made by mail will be deemed tendered and received only upon actual receipt (time being of the essence), at the address of Lender designated for such payment whether or not Lender has authorized payment by mail or any other manner.  Borrower hereby expressly assumes all risk of loss or liability resulting from non-delivery or delay in delivery of any payment transmitted by mail or in any other manner.

No delay or failure of Lender in exercising any right, remedy, power or privilege hereunder shall affect such right, remedy, power or privilege, nor shall any single or partial

Detroit_16079343_3

Exhibit 2
Page 1 of 8

exercise thereof preclude the exercise of any other right, remedy, power or privilege.  No delay or failure of Lender at any time to demand strict adherence to the terms of this Note shall be deemed to constitute a course of conduct inconsistent with the Lender's right at any time, before or after any Event of Default (defined below), to demand strict adherence to the terms of this Note.

Unless separately agreed in writing by Lender in its sole and absolute discretion, Borrower shall not be permitted to prepay any principal or interest outstanding under this Note.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or so operate as to require the Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note.  Should any interest or other charges, charged, paid or payable by the Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

As of the date of this Note, Borrower represents that Borrower has not made any qualified dispositions of any of Borrower's property to (a) a trust established under the Qualified Dispositions in Trust Act (codified at MCL 700.1041 et. seq.) ("Act"), or (b) any other asset protection trust.

Borrower agrees that Borrower will not make or attempt any qualified dispositions or other distribution or transfers of Borrower's property into a trust established under the Act, or any other asset protection trust, without obtaining the prior written consent of Lender.  Lender's consent to any such requested distribution shall be at the sole and absolute discretion of Lender.  Any consent provided by Lender described in this paragraph shall only be applicable for property identified and disclosed in writing by Borrower to Lender.  Lender's consent shall not be applicable to:  (x) any other property of Borrower which is not disclosed to Lender in writing as part of the qualified disposition under the Act; or (y) any other qualified disposition of property under the Act previously attempted or attempted in the future by Borrower.

Borrower acknowledges and agrees that if Lender does not provide its written consent to Borrower for a qualified or other disposition under the Act, then such disposition by Borrower shall not be valid under the Act with respect to Lender.

Borrower agrees that Borrower has an obligation to disclose immediately in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act.

Borrower agrees that this Note constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as stated in Subsection (11) of Section 5 of the Act.

The terms used in the previous five paragraphs shall have the meaning ascribed to them in the Act, unless otherwise defined herein.

Detroit_16079343_3

Exhibit 2
Page 2 of 8

Any of the following events shall constitute an "Event of Default" under this Note: (a) Borrower shall default in the payment of any sum which is or becomes due and payable under this Note, or (b) any representation or warranty made by Borrower in this Note or in any other Loan Document or other agreement, certificate or document furnished in connection with this Note shall prove untrue in any material respect, or (c) Borrower shall fail to observe or perform any other condition, covenant or agreement of Borrower set forth in this Note or in any other Loan Document, or (d) Borrower or any guarantor of all or any portion of the indebtedness under this Note (each a "Guarantor") shall default in the performance of any of its obligations to Lender, and such default shall not be cured or remedied by Borrower or such Guarantor within any applicable period of grace or cure with respect thereto, or (e) the default in the payment of any other obligation of Borrower or any Guarantor for borrowed money, or in the observance or performance of any conditions, covenants or agreements related or given with respect to any obligations for borrowed money sufficient to permit the holder thereof to accelerate the maturity of such obligation, including, without limitation, obligations of Borrower or any Guarantor to Lender, or (f) a judgment for the payment of money in excess of the sum of Ten Thousand Dollars ($10,000) in the aggregate shall be rendered against Borrower or any Guarantor and such judgment shall remain unpaid, unvacated, unbonded or unstayed by appeal or otherwise for a period of thirty (30) consecutive days from the date of its entry and such judgment is not covered by insurance from a solvent insurer who is defending such action without reservation of rights, or (g) Borrower or any Guarantor (i) shall admit in writing the inability to pay its or his debts as they become due and payable; or (ii) shall make an assignment for the benefit of creditors; or (iii) shall be adjudicated a bankrupt; or (iv) shall file a voluntary petition in bankruptcy or effect a plan or other arrangement with creditors; or (v) shall have applied for, or permitted the appointment of, a receiver or trustee or custodian for all or substantially all of the property or assets of such Borrower or Guarantor, or a trustee, receiver or custodian shall have been appointed for all or substantially all of the property or assets of such Borrower or Guarantor who shall not have been discharged within sixty (60) days after the date of his appointment, or (h) Borrower or any Guarantor shall dissolve or merge with or into any entity not theretofore affiliated with Borrower or Guarantor, as applicable, or Borrower or any Guarantor shall dispose of all or any material portion of its assets or equity, or (i) any Guarantor shall deny its liability or obligations under its guaranty or shall notify the Lender of its intention to attempt to cancel, revoke or terminate its guaranty, or shall fail to observe or comply with any term, covenant, condition and requirement under its guaranty, or (j) any suit or proceeding is filed against Borrower or any Guarantor which, if adversely determined to Borrower or such Guarantor, would have, as determined by Lender in its sole discretion, a material adverse effect on such Borrower or Guarantor, which suit is not dismissed within sixty (60) days of its filing, or (k) Borrower or any Guarantor (if a natural person) shall die or shall be determined mentally incapacitated by a court of competent jurisdiction, or (l) any breach or default by Borrower of any material term or condition under any swap, interest protection agreement, derivatives agreement, or similar agreements now or hereafter entered into by Borrower with Lender or any affiliate of Lender, or (m) the occurrence of any event (including any change, for any reason whatsoever, in the management, ownership or control of Borrower) which Lender determines, in its sole discretion and judgment, would have a material adverse effect upon Borrower and/or its ability to pay or perform any of its liabilities or obligations under this Note or (n) Borrower shall termination the Consulting Engagement (as defined in the Letter Agreement) or shall otherwise breach any of its obligations with respect thereto or (o) the Key Man Life Insurance Policy (as

3

Detroit_16079343_3

Exhibit 2
Page 3 of 8

defined in the Letter Agreement) ceases to be in full force and effect or (p) within 90 days from the date hereof, the Key Man Life Insurance Policy shall not have been issued and subject to a first priority collateral assignment in favor of Lender (subject to documentation acceptable to Lender).

Upon the occurrence of an Event of Default: (a) the entire unpaid principal balance and all accrued interest shall at the sole option of Lender be immediately due and payable, without presentment, demand, protest or any further notice or any other formalities of any kind, all of which are hereby expressly and irrevocably waived, together with (to the extent permitted under applicable law) the costs, attorneys' fees, and outside consultants' fees reasonably incurred by Lender in collecting or enforcing payment, (b) Lender may proceed to protect and enforce all or any of its rights, remedies, powers and privileges under this Note by action at law, suit in equity or other appropriate proceedings, and (c) any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Upon the occurrence and at any time during the continuance or existence of an Event of Default under subsection (g) of the preceding paragraph, then the Obligations and all indebtedness then outstanding thereunder shall automatically become immediately due and payable without any notice by Lender to Borrower and any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate. Further, upon the occurrence or at any time during the continuance or existence of any Events of Default hereunder, Lender may collect, deal with and dispose of all or any part of any security in any manner permitted or authorized by the Michigan Uniform Commercial Code or other applicable law (including public or private sale), and after deducting expenses (including, without limitation, reasonable attorneys' fees and expenses), Lender may apply the proceeds thereof in part or full payment of any of the Obligations, whether due or not, in any manner or order Lender elects.

Borrower hereby grants to Lender a security interest in Lender's own indebtedness or liability to Borrower, if any, however evidenced, including a security interest in all of Borrower's bank deposits, instruments, negotiable documents and chattel paper which at any time are in the possession or control of Lender, as further security for repayment of the Obligations; and the Borrower hereby grants to Lender all rights and privileges afforded a secured party under the Michigan Uniform Commercial Code.

All payments other than scheduled payments paid hereunder shall, at the option of Lender, first be applied against any and all fees, costs and expenses (including expenses of collection), then against accrued interest, and the balance against principal in inverse order of maturity. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

Borrower's obligations hereunder are cross-collateralized and cross-defaulted with all other indebtedness owing to Lender by Borrower.

Detroit_16079343_3

Exhibit 2
Page 4 of 8

No delay or omission of the Lender to exercise any right under this Note impairs that right nor can it be construed to waive any Event of Default or acquiesce in any Event of Default, and the making of an advance notwithstanding the existence of an Event of Default or the inability of the Borrower to satisfy the conditions precedent to such advance does not constitute a waiver or acquiescence. Any single or partial exercise of any right does not preclude any other or further exercise of it or the exercise of any other right, and no waiver, amendment or other variation of the terms of this Note is valid unless in writing signed by Borrower and Lender, and then only to the extent that such writing specifies. All remedies contained in this Note or afforded by law are cumulative and all are available to the Lender until this Note has been paid in full.

The Borrower must reimburse the Lender for any costs, internal charges and out-of-pocket expenses (including attorneys' fees and time charges of attorneys for the Lender, who may be employees of the Lender) paid or incurred by the Lender in connection with the preparation, review, execution, delivery, amendment, modification, administration, collection and enforcement of this Note. The Borrower further indemnifies the Lender, its directors, officers and employees against all losses, claims, damages, penalties, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation for litigation whether or not the Lender is a party) which any of them pay or incur arising out of or relating to this Note or the direct or indirect application or proposed application of the proceeds of this Note.

This Note, if executed by more than one Person, shall be the joint and several obligation of all of such Persons, and shall be binding upon each Borrower and its heirs, personal representatives, successors and assigns, whether expressed or not. The liability of each Borrower shall be absolute and unconditional, without regard to the liability of any other party hereto.

The terms of this Note bind and benefit the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not assign its rights or obligations under this Note. The Lender may at any time sell to one or more Persons participating interests in this Note. The Lender may at any time assign to one or more Persons all or any part of its rights and obligations under this Note, and the Borrower releases the Lender for the amount so assigned.

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan.  The Borrower irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Note, and the Borrower irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by Borrower related to this Note or the Loan Documents may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or proceeding against the Borrower in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

Detroit_16079343_3

Exhibit 2
Page 5 of 8

Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), and the Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow Lender to identify the Borrower in accordance with the Act.

## DEFINITIONS

As used in this Note, the following terms shall have the given meaning:

"Consulting Obligations" shall mean the obligations of Borrower arising in respect of the Consulting Engagement.

"Letter Agreement" shall mean the Letter Agreement, dated as of the date hereof between Borrower and Lender (as it may be amended, restated, supplemented or otherwise modified from time to time).

"Loan Documents" shall mean, collectively, this Note, any other promissory note evidencing other loans made by Lender to Borrower, the Letter Agreement, any guaranties, mortgage, security agreement, any swap agreements, other interest rate protection agreements, derivative agreements, any certificates (including, for the avoidance of doubt, the Perfection Certificate, dated as of the date hereof and executed by Company and each of the Guarantors), and any other document, instrument or agreement evidencing, securing or relating to this Note, together with any and all modifications and amendments to any of the foregoing.

"Obligations" shall mean, collectively, (i) Borrower's obligations for the payment of all sums advanced or to be advanced hereunder, together with interest on the outstanding principal balance of such sums and with any and all other sums payable by Borrower to the Lender pursuant to this Note or any other Loan Documents, along with Borrower's obligation for the payment of any letters of credit issued by Lender and payment and performance of all of the warranties, representations, covenants and agreements to be paid, fulfilled, observed and performed by Borrower under each Loan Document to which Borrower is a party and (ii) the Consulting Obligations.

"Person" shall mean any corporation, natural person, firm, limited liability company, joint venture, partnership, trust, unincorporated organization, enterprise, government or any department or agency of any government.

**LENDER AND BORROWER KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT EITHER OF THEM TO HAVE TO A TRIAL BY JURY IN ANY PROCEEDING (WHETHER SOUNDING IN CONTRACT OR TORT) WHICH IS IN ANY WAY CONNECTED WITH THIS NOTE, ANY RELATED AGREEMENT, OR THE RELATIONSHIP ESTABLISHED UNDER IT.**

[remainder of page intentionally left blank]

Detroit_16079343_3

Exhibit 2
Page 6 of 8

IN WITNESS WHEREOF, the undersigned have executed this Note as of the date first written above.

BORROWER:

LEVEL 3 HOMES & DESIGN, LLC

By: _____

    Name:  Jeremy Killian
    Title:  Member

By: _____

    Name:  Ryan Donato
    Title:  Member

[Signature Page to Term Note (16079343)]

Exhibit 2
Page 7 of 8

## Schedule A

| Month | Interest | Principal |
|---|---|---|
| August 2019 | $29,333.33 | $14,856.93 |
| September 2019 | $29,060.96 | $15,129.30 |
| October 2019 | $28,783.59 | $15,406.67 |
| November 2019 | $28,501.13 | $15,689.13 |
| December 2019 | $28,213.50 | $15,976.76 |
| January 2020 | $27,920.59 | $16,269.67 |
| February 2020 | $27,622.31 | $16,567.95 |
| March 2020 | $27,318.57 | $16,871.69 |
| April 2020 | $27,009.25 | $17,181.01 |
| May 2020 | $26,694.27 | $17,495.99 |
| June 2020 | $26,373.51 | $17,816.75 |
| July 2020 | $26,046.87 | $18,143.39 |
| August 2020 | $25,714.24 | $18,476.02 |
| September 2020 | $25,375.51 | $18,814.75 |
| October 2020 | $25,030.57 | $19,159.69 |
| November 2020 | $24,679.31 | $19,510.95 |
| December 2020 | $24,321.61 | $19,868.65 |
| January 2021 | $23,957.35 | $20,232.91 |
| February 2021 | $23,586.42 | $20,603.84 |
| March 2021 | $23,208.68 | $20,981.58 |
| April 2021 | $22,824.02 | $21,366.24 |
| May 2021 | $22,432.30 | $21,757.96 |
| June 2021 | $22,033.41 | $22,156.85 |
| July 2021 | $21,627.20 | $22,563.06 |
| August 2021 | $21,213.54 | $22,976.72 |
| September 2021 | $20,792.30 | $23,397.96 |
| October 2021 | $20,363.34 | $23,826.92 |
| November 2021 | $19,926.51 | $24,263.75 |
| December 2021 | $19,481.68 | $24,708.58 |
| January 2022 | $19,028.69 | $25,161.57 |
| February 2022 | $18,567.39 | $25,622.87 |
| March 2022 | $18,097.64 | $26,092.62 |
| April 2022 | $17,619.27 | $26,570.99 |
| May 2022 | $17,132.14 | $27,058.12 |
| June 2022 | $16,636.07 | $27,554.19 |
| July 2022 | $16,130.91 | $879,867.97 |

[Schedule A]

Exhibit 2
Page 8 of 8

## Continuing Security Agreement

Dated as of July 15, 2019

1.     **Grant of Security Interest.**  Each of the undersigned (each, a "Debtor") grants to Franklin Capital Group, LLC (including its successors and assigns, the "Lender"), whose address is 32300 Northwestern Highway, Farmington Hills, MI 48334, a continuing security interest in the Collateral, as defined below, to secure the payment and performance when due, whether by stated maturity, demand, acceleration or otherwise, of all of the Liabilities (as defined below) of such Debtor and all Liabilities of Level 3 Homes & Design, LLC, (the "Borrower").

"Liabilities", as used in this Continuing Security Agreement (this "Agreement"), means all obligations, indebtedness and liabilities of the Debtor to the Lender and/or any of the Lender's subsidiaries, affiliates or successors, now existing or later arising, including, without limitation, all loans, advances, interest, costs, overdraft indebtedness, credit card indebtedness, lease obligations, management and services fees or obligations relating to any interest rate, currency or commodity swap agreement, cap or collar agreement, and any other agreement or arrangement designated to protect against fluctuations in interest rates, currency exchange rates or commodity prices, all monetary obligations incurred or accrued during the pendency of any Bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceeding, and including all "Liabilities" as defined in any of the other Loan Documents, and all renewals, extensions, modifications, consolidations or substitutions of any of the foregoing in this definition, whether the Debtor or the Borrower may be liable jointly with others or individually liable as a debtor, maker, co-maker, drawer, endorser, guarantor, surety or otherwise, and whether voluntarily or involuntarily incurred, due or not due, absolute or contingent, direct or indirect, known or unknown, liquidated or unliquidated. Liabilities also include all interest, costs, expenses, and attorneys' fees accruing to, or incurred in either collecting any of the Liabilities of the Debtor or the Borrower or protecting, maintaining, or liquidating any collateral for any of the Liabilities, including the Collateral.

"Loan Documents", as used in this Agreement, means, collectively, (i) this Agreement, (ii) the "Loan Documents" (as defined in the Promissory Note (Term Loan) dated as of the date hereof, made by Borrower in favor of Lender), (iii) the "Loan Documents" (as defined in the Letter Agreement, dated as of the date hereof, between Borrower and Lender) and (iv) any guaranty, mortgage, security agreement, swap agreement, other interest rate protection agreement, derivative agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

"Consulting Engagement Documents", as used in this Agreement, means, collectively, (i) the Engagement Letter, dated as of the date hereof, between Borrower and Franklin Capital Management, LLC ("Consultant") and (ii) any guaranty, mortgage, security agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

2.     **Description of Collateral.** "Collateral," as used in this Agreement, means all personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

(a)     all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC")), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;

Exhibit 3
Page 1 of 14

(b)    all present and future insurance claims relating to any of the above;

(c)    all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Lender, or as to which Lender now or later controls possession by documents or otherwise;

(d)    all present and future books, records, and data of the Debtor relating to any of the above; and

(e)    all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In the definition of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.

Where the Collateral is in the possession of the Lender, the Debtor agrees to deliver to the Lender any property which represents an increase in the Collateral or profits or proceeds of the Collateral.

3.    **Collateral Definitions.**

(a)    **"Accounts"** means all of the Debtor's (i) "accounts," (including without limit "health-care insurance receivables") as defined in Article 9 of the UCC, (ii) rights to any refund of taxes paid at any time to any governmental entity, (iii) contract rights, and (iv) commercial tort claims.

(b)    **"Chattel Paper"** means all of the Debtor's "chattel paper" (including without limit "electronic chattel paper" and "tangible chattel paper") as such terms are defined in Article 9 of the UCC.

(c)    **"Deposit Accounts"** means all of the Debtor's "deposit accounts," as defined in Article 9 of the UCC.

(d)    **"Documents"** means all of the Debtor's "documents," "documents of title" or a "warehouse receipts," as such terms are defined in the UCC.

(e)    **"Equipment"** means (i) all of the Debtor's "equipment," as defined in Article 9 of the UCC, and (ii) any Documents issued with respect to any of Debtor's "equipment" (as defined in the UCC).

(f)    **"Farm Products"** means all of the Debtor's "farm products," as defined in Article 9 of the UCC. The Debtor will provide the Lender with a written list of the buyers, commission merchants or selling agents to or through whom it may sell any Farm Products, in form acceptable to the Lender. The Debtor will keep this list current by notice to the Lender at least seven (7) days prior to any sale. In this paragraph the terms "buyers," "commission merchants," and "selling agents" have the meanings given to them in the Federal Food Security Act of 1985, as amended, and in the UCC, as applicable.

(g)    **"Fixtures"** means all of the Debtor's "fixtures," as defined in Article 9 of the UCC.

(h)    **"General Intangibles"** means all of the Debtor's "general intangibles," (including without limit "payment intangibles") as such terms are defined in Article 9 of the UCC.

Detroit_16006165_5

Exhibit 3
Page 2 of 14

(i)     **"Goods"** means all of the Debtor's "goods," as defined in Article 9 of the UCC.

(j)     **"Instruments"** means all of the Debtor's "instruments," as defined in Article 9 of the UCC

(k)     **"Inventory"** means (i) all of the Debtor's "inventory," as defined in Article 9 of the UCC, and (ii) any Documents issued with respect to any of Debtor's "inventory" (as defined in the UCC).

(l)     **"Investment Property"** means all of the Debtor's "investment property," as defined in Article 9 of the UCC, including, without limit, securities, securities accounts, security entitlements, and financial assets.

(m)     **"Letter of Credit Rights"** means all of the Debtor's "letter of credit rights," as defined in Article 9 of the UCC.

(n)     **"Software"** means all of the Debtor's "software," as defined in Article 9 of the UCC.

(o)     **"Supporting Obligation"** means a Letter of Credit Right or secondary obligation that supports the payment or performance of an Account, Chattel Paper, a Document, a General Intangible, an Instrument, or Investment Property.

4.     **Representations, Warranties, and Covenants.** The Debtor represents and warrants to and covenants with the Lender that:

(a)     Its principal residence or chief executive office is at the address set forth in the Perfection Certificate, dated as of the date hereof, executed by Debtor and the guarantors signatory thereto (the "Perfection Certificate");

(b)     If the Debtor is not a natural person (i) the Debtor's name as it appears in this Agreement is identical to the name of the Debtor appearing in the Debtor's organizational documents, as amended, including any trust documents; and (ii) both the Taxpayer I.D. No. and the State Organization No., if any, set forth in the Perfection Certificate are correct;

(c)     If the Debtor is not a natural person, (i) that it is duly organized, existing and in good standing pursuant to the laws under which it is organized; and (ii) that the execution and delivery of this Agreement and the performance of the obligations it imposes (A) are within its powers and have been duly authorized by all necessary action of its governing body; (B) do not contravene the terms of its articles of incorporation or articles of organization, its by-laws, or any partnership agreement, operating agreement or other agreement governing its affairs;

(d)     The execution and delivery of this Agreement and the performance of the obligations it imposes do not violate any law, conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party;

(e)     This Agreement is a valid and binding agreement, enforceable according to its terms;

(f)     All balance sheets, profit and loss statement, and other financial statements furnished to the Lender are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates;

(g)     It will pay its Liabilities to the Lender;

(h)     It is or will become the owner of the Collateral free from any liens, encumbrances or security interests, except for this security interest and existing liens disclosed to and accepted by the Lender in writing,

Detroit_16006165_5

Exhibit 3
Page 3 of 14

and will defend the Collateral against all claims and demands of all persons at any time claiming any interest in it;

       (i)     No person, other than Lender or Consultant, has possession or control (as defined in the UCC) of the Collateral;

       (j)     It will keep the Collateral free of liens, encumbrances and other security interests (other than pursuant to this Agreement, the other Loan Documents, or the Consulting Engagement Documents), maintain it in good repair, not use it illegally, and exhibit it to the Lender on demand;

       (k)     It will protect the Collateral from loss, damage, or deterioration from any cause. At its own expense, the Debtor will maintain comprehensive casualty insurance and other insurance on the Collateral as may be reasonably required by Lender against such risks, in such amounts, with such deductibles and with such companies as may be satisfactory to the Lender, and provide the Lender with proof of insurance acceptable to the Lender. Each insurance policy shall contain a lender's loss payable endorsement satisfactory to the Lender and a prohibition against cancellation or amendment of the policy or removal of the Lender as loss payee without at least 30 days prior written notice to the Lender. In all events, the amounts of such insurance coverages shall conform to prudent business practices and shall be in such minimum amounts that the Debtor will not be deemed a co-insurer. The Debtor will promptly deliver to Lender, at Lender's request, evidence satisfactory to Lender that such insurance has been so procured and, with respect to casualty insurance, made payable to Lender. The Debtor hereby appoints Lender, or any employee or agent of Lender, as Debtor's attorney-in-fact, which appointment is coupled with an interest and irrevocable, and authorizes Lender, or any employee or agent of Lender, on behalf of the Debtor, to adjust and compromise any loss under said insurance and to endorse any check or draft payable to the Debtor in connection with returned or unearned premiums on said insurance or the proceeds of said insurance, and any amount so collected may be applied toward satisfaction of the Liabilities; provided, however, that Lender shall not be required hereunder so to act. If the Debtor fails to maintain satisfactory insurance, Lender has the option (but not the obligation) to do so and the Debtor agrees to repay all amounts so expended by Lender immediately upon demand, together with interest at the highest lawful default rate which could be charged by Lender on any of the Liabilities;

       (l)     It will not sell or offer to sell, lease, license or otherwise transfer the Collateral, nor change the location of the Collateral, without the written consent of the Lender, except for sale of Inventory in the ordinary course of business;

       (m)     It will pay promptly when due all taxes and assessments upon the Collateral, or for its use or operation. If the Debtor fails to pay any of these taxes, assessments, or other charges in the time provided above, Lender has the option (but not the obligation) to do so and the Debtor agrees to repay all amounts so expended by Lender immediately upon demand, together with interest at the highest lawful default rate which could be charged by Lender on any of the Liabilities;

       (n)     No financing statement covering all or any part of the Collateral or any proceeds is on file in any public office, unless the Lender has approved that filing. The Debtor irrevocably authorizes Lender to file one or more financing statements in form satisfactory to the Lender and will pay the cost of filing them in all public offices where filing is deemed by the Lender to be necessary or desirable. In addition, the Debtor shall execute and deliver, or cause to be executed and delivered, such other documents as the Lender may from time to time request to perfect or to further evidence the security interest created in the Collateral by this Agreement, including, without limitation: (i) any certificates of title to the Collateral with the security interest of the Lender noted thereon or executed applications for such certificates of title in form satisfactory to the Lender; (ii) any assignments of claims under government contracts which are included as part of the Collateral, together with any notices and related documents as the Lender may from time to time request; (iii) any assignment of any specific account receivable as the Lender may from time to time request; (iv) a notice of security interest and a control agreement with respect to any Collateral, all in form and substance satisfactory to the Lender; (v) a

4

Detroit_16006165_5

Exhibit 3
Page 4 of 14

notice to and acknowledgment from any bailee or other person in possession of any Collateral, all in form and substance satisfactory to the Lender; and (vi) any consent to the assignment of proceeds of any letter of credit, all in form and substance satisfactory to the Lender;

(o)     Lender has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether real property or personal property, to secure payment of the Liabilities, and the Debtor is not relying upon assets in which the Lender may have a lien or security interest for payment of the Liabilities;

(p)     It will not, without the prior written consent of the Lender, change (i) the Debtor's name, (ii) the Debtor's business organization, (iii) the jurisdiction under which the Debtor's business organization is formed or organized, or (iv) the address of the Debtor's chief executive office or principal residence or of any additional places of the Debtor's business;

(q)     It will (i) provide any information that Lender may reasonably request, and will permit Lender to inspect and copy its books and records and (ii) allow the Lender or the Lender's representative to enter upon all premises where Collateral is kept or may be located and inspect the Collateral, in each case, on the terms set forth in the Loan Documents;

(r)     It will allow the Lender to take such actions in its own name or in the Debtor's name as Lender, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the UCC) over any Collateral of such nature where control perfects the Lender's security interest;

(s)     The Lender shall have the right now and at any time in the future, in its sole and absolute discretion and without notice to the Debtor, to (i) prepare, file, and sign the Debtor's name on any proof of claim in bankruptcy or similar document against any owner of the Collateral and (ii) prepare, file, and sign the Debtor's name on any notice of lien, assignment or satisfaction of lien, or similar document in connection with the Collateral.  The Debtor authorizes the Lender to file financing statements containing the collateral description "All of the Debtor's assets whether now owned or hereafter acquired" or such lesser amount of assets as the Lender may determine, or the Lender may, at its option, file financing statements containing any collateral description which reasonably describes the Collateral in which a security interest is granted under this Agreement;

(t)     At any time and without notice, Lender may, as to any Collateral: (a) cause any or all of such Collateral to be transferred to its name or to the name of its nominees; (b) receive or collect, by legal proceedings or otherwise, all dividends, interest, principal payments and other sums and all other distributions at any time payable or receivable on account of such Collateral, and hold the same as Collateral, or apply the same to the Liabilities, the manner and distribution of the application to be in the sole discretion of Lender; (c) enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement or any other agreement relating to or affecting such Collateral, and deposit or surrender control of such Collateral, and accept other property in exchange for such Collateral and hold or apply the property or money so received pursuant to this Agreement; and (d) take such actions in its own name or in the Debtor's name as Lender, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the UCC) over any Collateral of such nature that perfection of the Lender's security interest may be accomplished by control; and

(u)     The Debtor shall hold in trust for Lender all payments received in connection with the Collateral, and all proceeds from the sale, lease or other disposition of any Collateral, and shall deposit all such payments and proceeds into bank accounts with a bank that has entered into a control agreement with Lender with respect to such accounts in form and substance satisfactory to Lender.

5.     **Accounts.**

Detroit_16006165_5

Exhibit 3
Page 5 of 14

(a)    The Debtor will, in the usual course of its business and at its own cost and expense, on the Lender's behalf but not as the Lender's agent, demand and receive and use its best efforts to collect all moneys due or to become due on the Accounts. Until the Lender gives notice to the Debtor to the contrary or until the Debtor is in default, it may use the funds collected in its business. Upon notice from the Lender or upon an Event of Default, the Debtor agrees that all sums of money it receives on account of or in payment or settlement of the Accounts shall be held by it as trustee for the Lender without commingling with any of its funds, and shall immediately be delivered to the Lender with endorsement to the Lender's order of any check or similar instrument.  If Lender notifies the Debtor that the Liabilities are on a remittance basis, the Debtor shall notify its account debtors that all electronic payments on any Account shall be made directly to an account at Lender designated by and under the exclusive control of Lender, and all other payments on the Accounts shall be made directly to a post office box designated by and under the exclusive control of Lender. Lender shall apply received payments in such order and manner as Lender elects, in its sole discretion.  All notices required in this paragraph will be immediately effective when sent. Such notices need not be given prior to the Lender taking action.  It is agreed that, at any time the Lender elects, it shall be entitled, in its own name or in the name of the Debtor or otherwise, but at the expense and cost of the Debtor, to collect, demand, receive, sue for or compromise any and all Accounts, and to give good and sufficient releases, to endorse any checks, drafts or other orders for the payment of money payable to the Debtor in payment and, in its discretion, to file any claims or take any action or proceeding which the Lender may deem necessary or advisable.  It is expressly understood and agreed, however, that the Lender shall not be required or obligated in any manner to make any demand or to make any inquiry as to the nature or sufficiency of any payment received by it or to present or file any claim or take any other action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

(b)    The Debtor appoints the Lender or the Lender's designee as the Debtor's attorney-in-fact to do all things with reference to the Collateral as provided for in this section including without limitation (1) to notify the post office authorities to change the Debtor's mailing address to one designated by the Lender, (2) to receive, open and dispose of mail addressed to the Debtor, (3) to sign the Debtor's name on any invoice or bill of lading relating to any Collateral, on assignments and verifications of account and on notices to the Debtor's customers, and (4) to do all things necessary to carry out this Agreement. The Debtor ratifies and approves all acts of the Lender as attorney-in-fact.

(c)    The Lender shall not be liable for any act or omission, nor any error of judgment or mistake of fact or law, for any loss or damage which the Debtor may suffer as a result of Lender's processing of items or its exercise of any other rights or remedies under this Agreement, but only for its gross negligence or willful misconduct. Except as caused by Lender's gross negligence or willful misconduct, the Debtor agrees to indemnify and hold Lender harmless from and against any third party claims, demands or actions, and all related expenses or liabilities, including, without limitation, attorneys fees and causes of action whatsoever. This power being coupled with an interest is irrevocable until the Liabilities have been fully satisfied.

(d)    Immediately upon the Debtor's receipt of any Collateral evidenced by an agreement, Instruments, Chattel Paper or Documents ("Special Collateral"), the Debtor shall mark the Special Collateral to show that it is subject to the Lender's security interest and shall deliver the original to the Lender together with appropriate endorsements and other specific evidence of assignment in form and substance satisfactory to the Lender.

(e)    On each occasion on which the Debtor evidences to Lender the account balances on and the nature and extent of any Accounts, the Debtor shall be deemed to have warranted that, except as otherwise indicated: (a) each of those Accounts is valid and enforceable without performance by the Debtor of any act; (b) each of those account balances are in fact owing; (c) there are no setoffs, recoupments, credits, contra accounts, counterclaims or defenses against any of those Accounts; (d) as to any Accounts represented by a note, trade acceptance, draft or other instrument or by any chattel paper or document, the same has/have been endorsed and/or delivered by the Debtor to Lender; (e) the Debtor has not received with respect to any

6

Exhibit 3
Page 6 of 14

Account, any notice of the death of the related account debtor, nor of the dissolution, liquidation, termination of existence, insolvency, business failure, appointment of a receiver for, assignment for the benefit of creditors by, or filing of a petition in bankruptcy by or against, the account debtor; and (f) as to each Account, except as may be expressly permitted by Lender to the contrary in another document, the account debtor is not an affiliate of the Debtor, the United States of America or any department, agency or instrumentality of it, or a citizen or resident of any jurisdiction outside of the United States. The Debtor will do all acts and will execute all writings requested by Lender to perform, enforce performance of, and collect all Accounts. Debtor will deliver to Lender such documents, instruments and other writings evidencing or otherwise relating to the Accounts as Lender may reasonably request from time to time. The Debtor shall neither make nor permit any modification, compromise or substitution for any Account without the prior written consent of Lender. Lender may at any time and from time to time verify Accounts directly with account debtors or by other methods acceptable to Lender without notifying the Debtor. The Debtor agrees, at Lender's request, to arrange or cooperate with Lender in arranging for verification of Accounts.

6.      **Additional Covenants.** If the Debtor is not liable for all or any part of the Liabilities (such Liabilities being referred to in this paragraph as the "Debt"), then the Debtor agrees that:

        (a)      If any monies become available to the Lender that it can apply to any Debt, the Lender may apply them to Debt not secured by this Agreement.

        (b)      Without notice to or the consent of the Debtor, the Lender may (i) take any action it chooses against the Borrower, against any collateral for the Debt, or against any other person liable for the Debt; (ii) release the Borrower or any other person liable for the Debt, release any collateral for the Debt, and neglect to perfect any interest in any such collateral; (iii) forbear or agree to forbear from exercising any rights or remedies, including any right of setoff, that it has against the Borrower, any other person liable for the Debt, or any other collateral for the Debt; (iv) extend to the Borrower additional Debt to be secured by this Agreement; or (v) renew, extend, modify or amend any Debt, and deal with the Borrower or any other person liable for the Debt as it chooses.

        (c)      None of the Debtor's obligations under this Agreement shall be affected by (i) any act or omission of the Lender; (ii) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of the Borrower, (iii) any receivership, insolvency, bankruptcy, reorganization or other similar proceedings affecting the Borrower or any of its assets; or (iv) any change in the composition or structure of the Borrower or any Debtor, including a merger or consolidation with any other entity.

        (d)      The Lender's rights under this section and this Agreement are unconditional and absolute, regardless of the unenforceability of any provision of any agreement between the Borrower and the Lender, or the existence of any defense, setoff or counterclaim that the Borrower may be able to assert against the Lender.

        (e)      The Debtor waives all rights of subrogation, contribution, reimbursement, indemnity, exoneration, implied contract, recourse to security, setoff and any other claim (as that term is defined in the federal Bankruptcy Code, as amended from time to time) that it may have or acquire in the future against the Borrower, any other person liable for the Debt, or any collateral for the Debt, because of the existence of this Agreement, the Debtor's performance under this Agreement, or the Lender's availing itself of any rights or remedies under this Agreement.

        (f)      If any payment to the Lender on any Debt is wholly or partially invalidated, set aside, declared fraudulent or required to be repaid under any bankruptcy or insolvency act or code, under any state or federal law, or under common law or equitable principles, then this Agreement shall remain in full force and effect or be reinstated, as the case may be, until payment in full to the Lender of the repaid amounts, and of the Debt. If this Agreement must be reinstated, the Debtor agrees to execute and deliver to the Lender new agreements

Detroit_16006165_5

Exhibit 3
Page 7 of 14

and financing statements, if necessary, in form and substance acceptable to the Lender, covering the Collateral.

7.    **Default/Remedies.**

(a)    If (i) any of the Liabilities are not paid, when due, whether upon demand or at maturity, whether by acceleration or otherwise, (ii) any warranty, representation, covenant, financial statement, or other information made, given or furnished to Lender by or on behalf of Borrower, the Debtor, or any guarantor of any of the Liabilities ("Guarantor") shall be, or shall prove to have been, false or materially misleading when made, given, or furnished; (iii) any substantial loss, theft, damage or destruction to or of any Collateral, or the issuance or filing of any attachment, levy, garnishment or the commencement of any proceeding in connection with any Collateral or of any other judicial process of, upon or in respect of Borrower, the Debtor, any Guarantor, or any Collateral, (iv) there shall occur any sale or other disposition by Borrower, the Debtor, or any Guarantor of any substantial portion of its assets or property or voluntary suspension of the transaction of business by Borrower, the Debtor, or any Guarantor, or death, dissolution, termination of existence, merger, consolidation, insolvency, business failure, or assignment for the benefit of creditors of or by Borrower, the Debtor, or any Guarantor; or commencement of any proceedings under any state or federal bankruptcy or insolvency laws or laws for the relief of debtors by or against Borrower, the Debtor, or any Guarantor; or the appointment of a receiver, trustee, court appointee, sequestrator or otherwise, for all or any part of the property of Borrower, the Debtor, or any Guarantor, (v) Lender deems the margin of Collateral insufficient or itself insecure, in good faith believing that the prospect of payment of the Liabilities or performance of this Agreement is impaired or shall fear deterioration, removal, or waste of Collateral; or (vi) any default or event of default shall occur under any instrument, agreement or other document evidencing, securing or otherwise relating to any of the Liabilities (including, for the avoidance of doubt, under any of the Loan Documents) or under the Consulting Engagement Documents (the foregoing (i) through (vi), each an "Event of Default"),then Lender may at its discretion and without prior notice to the Debtor declare any or all of the Liabilities to be immediately due and payable, and shall have and may exercise any right or remedy available to it including, without limitation, any one or more of the following rights and remedies: (1) exercise all the rights and remedies upon default, in foreclosure and otherwise, available to secured parties under the provisions of the Uniform Commercial Code and other applicable law, (2) institute legal proceedings to foreclose upon the lien and security interest granted by this Agreement, to recover judgment for all amounts then due and owing as Liabilities, and to collect the same out of any Collateral or the proceeds of any sale of it, (3) institute legal proceedings for the sale, under the judgment or decree of any court of competent jurisdiction, of any or all Collateral, (4) require the Debtor to assemble the Collateral and make it available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties, (5) personally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession with or without demand and with or without process of law of all or any of it and/or render it unusable; and without being responsible for loss or damage to such Collateral, hold, operate, sell, ship, reclaim, recover, store, finish, maintain, repair, lease, or dispose of all or any Collateral at one or more public or private sales, leasings or other dispositions, at places (including, without limit, the Debtor's premises) and times and on terms and conditions as Lender may deem fit, without any previous demand or advertisement; and except as provided in this Agreement, all notice of sale, lease or other disposition, and advertisement, and other notice or demand, any right or equity of redemption, and any obligation of a prospective purchaser or lessee to inquire as to the power and authority of Lender to sell, lease, or otherwise dispose of the Collateral or as to the application by Lender of the proceeds of sale or otherwise, which would otherwise be required by, or available to the Debtor under, applicable law are expressly waived by the Debtor to the fullest extent permitted.

(b)    Should an Event of Default occur, the Debtor will pay to the Lender all costs reasonably incurred by the Lender for the purpose of enforcing its rights hereunder, to the extent not prohibited by law, including, without limitation: costs of foreclosure; costs of obtaining money damages; and a reasonable fee for the services of internal and outside attorneys employed or engaged by the Lender for any purpose related to this Agreement, including, without limitation, consultation, drafting documents, sending notices or instituting,

Detroit_16006165_5

Exhibit 3
Page 8 of 14

prosecuting or defending litigation or any proceeding, all such costs shall bear interest at the highest per annum rate applicable to any of the Liabilities, but not in excess of the maximum rate permitted by law.

(c)    The Debtor agrees that upon an Event of Default the Lender may dispose of any of the Collateral in its then present condition, that the Lender has no duty to repair or clean the Collateral prior to sale, and that the disposal of the Collateral in its present condition or without repair or clean-up shall not affect the commercial reasonableness of such sale or disposition. The Lender's compliance with any applicable state or federal law requirements in connection with the disposition of the Collateral will not adversely affect the commercial reasonableness of any sale of the Collateral. The Lender may disclaim warranties of title, possession, quiet enjoyment, and the like, and the Debtor agrees that any such action shall not affect the commercial reasonableness of the sale. In connection with the right of the Lender to take possession of the Collateral, the Lender may take possession of any other items of property in or on the Collateral at the time of taking possession, and hold them for the Debtor without liability on the part of the Lender. The Debtor expressly agrees that Lender may enter upon the premises where the Collateral is believed to be located without any obligation of payment to the Debtor, and that the Lender may, without cost, use any and all of the Debtor's "equipment" (as defined in the UCC) in the manufacturing or processing of any "inventory" (as defined in the UCC) or in growing, raising, cultivating, caring for, harvesting, loading and transportation of any of the Collateral that constitutes "farm products" (as defined in the UCC). If there is any statutory requirement for notice, that requirement shall be met if the Lender sends notice to the Debtor at least ten (10) days prior to the date of sale, disposition, or other event giving rise to the required notice, and such notice shall be deemed commercially reasonable. The Debtor is liable for any deficiency remaining after disposition of the Collateral.

(d)    The proceeds of any sale or other disposition of Collateral authorized by this Agreement shall be applied by Lender first upon all expenses authorized by the UCC and all attorneys fees and legal expenses incurred by Lender; then the balance of the proceeds of the sale or other disposition shall be applied to the payment of interest on the Liabilities, then to the payment of principal on Liabilities, then any remaining proceeds shall be paid over to the Debtor or to such other person(s) as may be entitled to it under applicable law. The Debtor shall remain liable for any deficiency, which shall be due to Lender immediately upon demand. The Debtor agrees that Lender shall be under no obligation to accept any noncash proceeds in connection with any sale or disposition of Collateral unless failure to do so would be commercially unreasonable. If Lender agrees in its sole discretion to accept noncash proceeds (unless the failure to do so would be commercially unreasonable), Lender may ascribe any commercially reasonable value to such proceeds. Without limiting the foregoing, Lender may also apply any discount factor in determining the present value of proceeds to be received in the future or may elect to apply proceeds to be received in the future only as and when such proceeds are actually received in cash by Lender.

(e)    At any sale pursuant to this Section 7, whether under the power of sale, by virtue of judicial proceedings or otherwise, it shall not be necessary for Lender or a public officer under order of a court to have present physical or constructive possession of Collateral to be sold. The recitals contained in any conveyances and receipts made and given by Lender or the public officer to any purchaser at any sale made pursuant to this Agreement shall, to the extent permitted by applicable law, conclusively establish the truth and accuracy of the matters stated (including, without limit, as to the amounts of the principal of and interest on the Liabilities, the accrual and nonpayment of it and advertisement and conduct of the sale); and all prerequisites to the sale shall be presumed to have been satisfied and performed. Upon any sale of any Collateral, the receipt of the officer making the sale under judicial proceedings or of Lender shall be sufficient discharge to the purchaser for the purchase money, and the purchaser shall not be obligated to see to the application of the money. Any sale of any Collateral under this Agreement shall be a perpetual bar against the Debtor with respect to that Collateral. At any sale or other disposition of the Collateral pursuant to this Section 7, Lender disclaims all warranties which would otherwise be given under the Uniform Commercial Code, including, without limit, a disclaimer of any warranty relating to title, possession, quiet enjoyment or the like, and Lender may communicate these disclaimers to a purchaser at such disposition. This disclaimer of warranties will not render the sale

9

Exhibit 3
Page 9 of 14

commercially unreasonable. Lender may, in its discretion, bid and purchase any of the Collateral at any sale pursuant to this Section 7.

8.      **Waivers.**  The Debtor absolutely, unconditionally, knowingly, and expressly waives:

(a)      To the extent not expressly prohibited by applicable law, any right to require Lender to (a) proceed against any person or property; (b) give notice of the terms, time and place of any public or private sale of personal property security held from the Debtor or any other person, or otherwise comply with the provisions of Section 9.504 of the Uniform Commercial Code in effect prior to July 1, 2001 or its successor provisions thereafter; or (c) pursue any other remedy in the Lender's power. The Debtor waives notice of acceptance of this Agreement and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Liabilities, any and all other notices to which the Debtor might otherwise be entitled, and diligence in collecting any Liabilities, and agrees that the Lender may, once or any number of times, modify the terms of any Liabilities, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Liabilities, or permit Borrower to incur additional Liabilities, all without notice to the Debtor and without affecting in any manner the unconditional obligation of the Debtor under this Agreement. The Debtor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the Debtor under this Agreement, and acknowledges that such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the Debtor now or later securing the Liabilities, and acknowledges that as of the date of this Agreement no such defense or setoff exists. The Debtor ratifies and approves all acts of Lender acting in its capacity as the Debtor's attorney-in-fact under this Agreement. Neither Lender nor its attorney-in-fact will be liable for any acts or omissions or for any error of judgment or mistake of fact or law.

(b)      Its right to require Lender to institute suit against, or to exhaust any rights and remedies which Lender has or may have against, Borrower or any third party, or against any Collateral provided by Borrower or any third party.  In this regard, the Debtor is bound to the payment of all Liabilities whether now existing or hereafter accruing, as fully as if such Liabilities were directly owing to Lender by the Debtor.  The Debtor waives any defense arising by reason of any disability or other defense (other than the defense that the Liabilities shall have been fully and finally performed and indefeasibly paid) of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower in respect thereof.

(c)      (i) Any rights to assert against Lender, any defense (legal or equitable), set-off, counterclaim, or claim which the Debtor may now or at any time hereafter have against the Borrower or any other party liable to Lender; (ii) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Liabilities or any security therefor; (iii) any defense the Debtor has to performance hereunder, and any right the Debtor has to be exonerated arising by reason of: the impairment or suspension of Lender's rights or remedies against Borrower; the alteration by Lender of the Liabilities; any discharge of the Liabilities by operation of law as a result of Lender's intervention or omission; or the acceptance by Lender of anything in partial satisfaction of the Liabilities; (iv) the benefit of any statute of limitations affecting the Debtor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Liabilities shall similarly operate to defer or delay the operation of such statute of limitations applicable to the Debtor's liability hereunder.

(d)      Any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by Lender; or (ii) any election by Lender under the Bankruptcy Code Section 1111(b) to limit the amount of, or any collateral securing, its claim against Borrower.

Detroit_16006165_5

Exhibit 3
Page 10 of 14

(e)     Any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from Borrower or any other person any amounts paid or the value of any Collateral given by the Debtor pursuant to this Agreement until such time as all of the Liabilities have been fully paid.

9.     **Miscellaneous.**

(a)     Where the Collateral is located at, used in or attached to a facility not owned by the Debtor, the Debtor will obtain from the lessor, or other appropriate party, a consent to the granting of this security interest and a subordination of the lessor's interest in any of the Collateral, in form acceptable to the Lender.

(b)     At its option the Lender may, but shall be under no duty or obligation to, discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral, pay for insurance on the Collateral, and pay for the maintenance and preservation of the Collateral, and the Debtor agrees to reimburse the Lender on demand for any payment made or expense incurred by the Lender, with interest at the maximum legal rate.

(c)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver, nothing in this Agreement is intended, nor shall it be construed, to preclude Lender from pursuing any other right or remedy provided by law or in equity, and no waiver or indulgence by the Lender of any default or Event of Default shall be effective unless in writing and signed by an authorized officer of the Lender, nor shall a waiver on one occasion be construed as a waiver of that right on any future occasion or a waiver of any other right.

(d)     The Lender shall not be required to marshal any present or future collateral security (including this Agreement and the Collateral) for the Liabilities or any of them or to resort to such collateral security or other assurances of payment in any particular order.  To the extent that it lawfully may, the Debtor hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Agreement or under any other instrument creating or evidencing any of the Liabilities or under which any of the Liabilities is outstanding or by which any of the Liabilities is secured or payment thereof is otherwise assured, and, to the extent allowed by applicable law, the Debtor irrevocably waives the benefits of all such laws.

(e)     If any provision of this Agreement is invalid, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective.

(f)     Notice from one party to another relating to this Agreement shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address, telex number or telecopier number set forth above by any of the following means: (i) hand delivery, (ii) registered or certified mail, postage prepaid, with return receipt requested, (iii) first class or express mail, postage prepaid, (iv) Federal Express or like overnight courier service or (v) telecopy, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by first class, registered or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or overnight courier.

(g)     To the extent that any of the Liabilities is payable upon demand, nothing contained in this Agreement shall modify the terms and conditions of those Liabilities nor shall anything stated in this Agreement prevent Lender from making demand, with or without notice and with or without reason, and whether or not a default or Event of Default has occurred, for immediate payment of any or all of those Liabilities at any time.

(h)     All rights of the Lender shall inure to the benefit of the Lender's successors and assigns; and all obligations of the Debtor shall bind the Debtor's heirs, executors, administrators, successors and assigns. If

Detroit_16006165_5

Exhibit 3
Page 11 of 14

there is more than one Debtor, their obligations are joint and several.  Debtor acknowledges that Lender may, at any time, assign its rights under this Agreement and any other Loan Document, including without limitation Lender's rights to payment and enforcement of the Liabilities.

(i)      The Debtor shall pay or reimburse the Lender for all costs, fees and expenses incurred by the Lender or for which the Lender becomes obligated in connection with the enforcement of this Agreement, including attorneys' fees of counsel to the Lender, which shall also include attorneys' fees and time charges of attorneys who may be employees of the Lender of any of it subsidiaries or affiliates, plus costs and expenses of such attorneys or of the Lender; search fees, costs and expenses; and all taxes payable in connection with this Agreement.  The Debtor shall pay any and all stamp and other taxes, UCC search fees, filing fees and other costs and expenses in connection with the execution and delivery of this Agreement to be delivered hereunder, and agrees to save and hold the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such costs and expenses.  That portion of the Liabilities consisting of costs, expenses or advances to be reimbursed by the Debtor to the Lender pursuant to this Agreement which are not paid on or prior to the date hereof shall be payable by the Debtor to the Lender on demand.  If at any time or times hereafter the Lender: (i) employs counsel for advice or other representation (A) with respect to this Agreement, (B) to represent the Lender in any litigation, contest, dispute, suit or proceeding or to commence, defend, or intervene or to take any other action in or with respect to any litigation, contest, dispute, suit, or proceeding (whether instituted by the Lender, the Debtor, or any other party) in any way or respect relating to this Agreement, or (C) to enforce any rights of the Lender against the Debtor or any other party under of this Agreement; (ii) takes any action to protect, collect, sell, liquidate, or otherwise dispose of any of the Collateral; and/or (iii) attempts to or enforces any of the Lender's rights or remedies under this Agreement, the costs and expenses incurred by the Lender in any manner or way with respect to the foregoing, shall be part of the Liabilities, payable by the Debtor to the Lender on demand.

(j)      A carbon, photographic or other reproduction of this Agreement is sufficient, and can be filed as a financing statement, The Lender is irrevocably appointed the Debtor's attorney-in-fact to execute any financing statement on the Debtor's behalf covering the Collateral.

(k)      The terms and provisions of this security agreement shall be governed by and construed in accordance with the laws of the State of Michigan (without regard to conflict of law principles). The Debtor irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Agreement, and the Debtor irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by the Debtor related to this Agreement may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or proceeding against the Debtor in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

(l)      The parties intend that the terms used herein which are defined in the UCC have, at all times, the broadest and most inclusive meanings possible.  Accordingly, if the UCC shall in the future be amended or held by a court to define any term used herein more broadly or inclusively than the UCC in effect on the date of this Agreement, then such term, as used herein, shall be given such broadened meaning.  If the Uniform Commercial Code shall in the future be amended or held by a court to define any term used herein more narrowly, or less inclusively, than the UCC in effect on the date of this Agreement, such amendment or holding shall be disregarded in defining terms used in this Agreement.

10.      **Release**.  The Debtor hereby releases the Lender, its affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities,

Detroit_16006165_5

Exhibit 3
Page 12 of 14

of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "Released Matters"). Without limiting the generality of the foregoing, the Debtor hereby waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released. The Debtor acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters. If the Debtor asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the foregoing release or challenges the enforceability of the foregoing release (in each case, a "Violation"), then the Debtor agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

11.     **Information Sharing.** The Lender may provide, without any limitation whatsoever, any information or knowledge the Lender may have about the undersigned or any matter relating to this Agreement and any related documents to any of its subsidiaries or affiliates or their successors, or to any one or more purchasers or potential purchasers of this Agreement or any related documents, and the undersigned waives any right to privacy the undersigned may have with respect to such matters. The Debtor agrees that the Lender may at any time sell, assign or transfer one or more interests or participations in all or any part of its rights or obligations in this Agreement to one or more purchasers whether or not related to the Lender.

12.     **WAIVER OF JURY TRIAL.** THE LENDER AND THE DEBTOR, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT WAIVE ANY RIGHT EITHER OF THEM HAVE TO A TRIAL BY JURY IN ANY PROCEEDING (WHETHER SOUNDING IN CONTRACT OR TORT) WHICH IS IN ANY WAY CONNECTED WITH THIS OR ANY RELATED AGREEMENT, OR THE RELATIONSHIP ESTABLISHED UNDER THEM. THIS PROVISION MAY ONLY BE MODIFIED IN A WRITTEN INSTRUMENT EXECUTED BY LENDER AND THE DEBTOR.

13.     **Perfection of Certain Collateral.** The Lender and Debtor acknowledge that Debtor is also granting a security interest in the Collateral in favor of Consultant. In the event that the Lender takes possession of or has "control" (as such term is used in the Uniform Commercial Code as in effect in each applicable jurisdiction) over any Collateral for purposes of perfecting its lien therein, the Lender shall be deemed to be holding such Collateral on its own behalf, and as representative for Consultant solely for purposes of perfection of Consultant's lien under the Uniform Commercial Code; provided that the Lender shall not have any duty or liability to protect or preserve any rights pertaining to any of the Collateral for Consultant.

Detroit_16006165_5

Exhibit 3
Page 13 of 14

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

**Debtor:**

**LEVEL 3 HOMES & DESIGN, LLC**

By: _____
      Name: Jeremy Killian
      Title: Member

By: _____
      Name: Ryan Donato
      Title: Member

**HEIRLOOM INC**

By: _____
      Name: Jeremy Killian
      Title: President

**LEVEL 3, LLC**

By: _____
      Name: Jeremy Killian
      Title: Sole Member

Accepted and Agreed:

**Lender:**

FRANKLIN CAPITAL GROUP, LLC.

By: _____
      Name: Shaya Baum
      Title: Partner

[Signature Page to Continuing Security Agreement (Lender as SP)]

Detroit_16006165_5

Exhibit 3
Page 14 of 14

# PERFECTION CERTIFICATE

July 15, 2019

In connection with (i) that certain letter agreement (the "Letter Agreement") to be entered into by and among Level 3 Homes & Design, LLC (the "Borrower") and Franklin Capital Group LLC (the "Lender"), (ii) the Term Note (as defined in the Letter Agreement), (iii) the other Loan Documents (as defined in the Letter Agreement) executed in connection therewith, and (iv) the engagement letter for consulting services, to be entered into by and among the Borrower and Franklin Capital Management, LLC, Borrower and each Guarantor (as defined in the Letter Agreement) hereby certify as follows (capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Letter Agreement):

## 1.      Organizational Information

**A.      Legal Name, Organizations, Corporate Functions, Jurisdiction of Organization and Organizational Identification Number.** The full and exact legal name (as it appears in its certificate or articles of organization, limited liability membership agreement, or similar organizational documents, in each case as amended to date), the type of organization, the corporate function, the jurisdiction of organization and the state organizational identification number and federal taxpayer identification number) of each Loan Party (other than any Individual Guarantor) are as set forth on Schedule 1A hereto.

**B.      Prior Legal Names.**   The full and exact prior legal names and jurisdictions of organization of each Loan Party (other than any Individual Guarantor) used during the prior five years are as set forth on Schedule 1B hereto.

**C.      Acquisitions and Mergers.** The full and exact legal names and prior jurisdictions of formations of (i) each entity merged with and into a Loan Party (other than any Individual Guarantor) during the prior five years and (ii) each entity of which a Loan Party has acquired all or substantially all of such entity's assets or all or substantially all of the assets of any division or operating unit of such entity during the prior five years are as set forth on Schedule 1C hereto.

**D.      Corporate Ownership and Organizational Structure.** Attached as Schedule 1D hereto is (i) a list of all equity interests issued by the Borrower, including the owners of such interests and (ii) if available, a true and correct organizational chart showing the Loan Parties (other than any Individual Guarantor), any joint ventures of any Loan Party and any subsidiary of any Loan Party (whether foreign or domestic).

## 2.      Location Information

**A.      Chief Executive Offices, Mailing Addresses and other Locations.** The chief executive office address and the preferred mailing address and any other location in which each Loan Party (other than any Individual Guarantor) maintains any collateral or any books and records relating thereto of each Loan Party is set forth on Schedule 2A.

**B.      Warehousemen, Bailees, etc.** Except as set forth on Schedule 2B hereto, no persons (including warehousemen, customs brokers, freight forwarders, common carriers or other bailees) other than the Loan Parties have possession of any assets (including goods, inventory and equipment) of any Loan Party (other than any Individual Guarantor).

3.    **Investment Related Property**

   A.    **Equity Interests.** Set forth on <u>Schedule 3A</u> is a list of all equity interests owned by each Loan Party (other than any Individual Guarantor) together with the type of organization which issued such equity interests (e.g. corporation, limited liability company, partnership or trust).

   B.    **Securities/Commodities Accounts and Deposit Accounts.** Set forth on <u>Schedule 3B</u> is a list of all securities and commodities accounts, and all bank accounts (checking, savings, money market etc.) of each Loan Party (other than any Individual Guarantor).

   C.    **Instruments and Chattel Paper.** Set forth on <u>Schedule 3C</u> is a list of all instruments or chattel paper held by or payable to any of the Loan Parties (other than any Individual Guarantor)]

4.    **Intellectual Property.** Set forth on <u>Schedule 4</u> hereto is a list of all copyrights, patents, trademarks and other intellectual property owned or licensed by any Loan Party (other than any Individual Guarantor) (including any applications for same).

5.    **Commercial Tort Claims.** Set forth on <u>Schedule 5</u> hereto is a list of any commercial tort claims that any Loan Party (other than any Individual Guarantor) has against other parties.

6.    **Motor Vehicles.** Set forth on <u>Schedule 6</u> hereto is a list of all motor vehicles (covered by certificates of title or ownership) owned by any of the Loan Parties (other than any Individual Guarantor).

7.    **Insurance.** Set forth on <u>Schedule 7</u> hereto is a list of all insurance coverage for the benefit of any Loan Party (other than any Individual Guarantor).

8.    **Letters of Credit.** Set forth on <u>Schedule 8</u> hereto is a list of any letters of credit of which a Loan Party (other than any Individual Guarantor) is the beneficiary, including the issuing bank thereof and whether such letter of credit was issued in support of outstanding accounts receivable.

9.    **Real Property.** Set forth on <u>Schedule 9</u> hereto is a list of (a) all real property owned or leased by each Loan Party (other than any Individual Guarantor), (b) if such property is leased, the landlord and the term of the lease, and (c) if such property is held in fee, the holder of any lien on such real property.

10.    **Financing Matters.** Set forth on <u>Schedule 10</u> hereto is a list of all outstanding indebtedness and other financing arrangements (including merchant advance financings and letters of credit outstanding) of each of the Loan Parties (other than any Individual Guarantor) in existence immediately prior to the making of the Term Loan.

11.    **Acknowledgment.** Each Loan Party acknowledges that this Perfection Certificate is provided in connection with the Loan Documents and that the Lender will rely upon the information contained herein. Each Loan Party further acknowledges and agrees that the information contained herein shall be deemed to be a representation and warranty under the Loan Documents, and that any material misstatements or material omissions contained herein may constitute a default or Event of Default under one or more of the Loan Documents.

[Signature Page to Follow]

IN WITNESS WHEREOF, each of the undersigned hereto have caused this Perfection Certificate to be executed as of the date above first written by its officer thereunto duly authorized.

**LOAN PARTIES:**

LEVEL 3 HOMES & DESIGN, LLC, an Oregon limited liability company, *dba* Tiny Innovations

By: _____
    Name: Jeremy Killian
    Title: Member

By: _____
    Name: Ryan Donato
    Title: Member


LEVEL 3 LLC, an Oregon limited liability company

By: _____
    Name: Jeremy Killian
    Title: Member


_____
Jeremy Killian, individually

_____
Ryan Donato, individually

DCAPDX\3102592.v5

Exhibit 4
Page 3 of 20

## Schedule 1A

Legal Name, Organizations, Corporate Functions, Jurisdiction of Organization and Organizational Identification Number

| Name of Loan Party | Type of Organization[1] | Corporate Function[2] | Jurisdiction of Organization | Organizational Identification Number | Federal Taxpayer Identification Number |
|---|---|---|---|---|---|
| Level 3 Homes & Design, LLC | LLC | Operating Company | Oregon | 972066-93 | 80-0954193 |
| Level 3, LLC | LLC | Holder of dealer license | Oregon | 911749-96 | 90-0531495 |

---

[1] E.g. corporation, limited liability company, limited partnership

[2] Eg, holding company, owner of intellectual property or real estate, operating company

**Schedule 1B**

Prior Legal Names

| Name of Loan Party | Prior Legal Name | Jurisdiction of Organization |
|---|---|---|
| Level 3 Homes & Design, LLC | Level 3 Homes, LLC | Oregon |
| Level 3 LLC | None | N/A |

**Schedule 1C**

Acquisitions and Mergers

| Name of Loan Party | Jurisdiction of Organization of non-Loan Party entity | Transaction Description |
|---|---|---|
| Level 3 Homes & Design, LLC | Oregon | Borrower acquired Heirloom Inc, an Oregon corporation *dba* Tiny Heirloom, by Stock Purchase Agreement effective 3/15/2019 and closed effective 3/29/2019 |

**Schedule 1D**

Borrower Corporate Ownership and Organizational Structure

| Issuer | Type of Organization | Number or Percentage of Shares or Interests Owned | Total Shares Outstanding | Owner | Certificate # (if uncertificated, please indicate) | Article 8 Elected? |
|---|---|---|---|---|---|---|
| Level 3 Homes & Design, LLC | LLC | 80% | N/A | Jeremy Killian | None | - |
| Level 3 Homes & Design, LLC | LLC | 20% | N/A | Ryan Donato | None | - |

Organizational Structure

[attached]

DCAPDX\3102592.v5

Exhibit 4
Page 7 of 20

# Organizational Structure



Exhibit 4
Page 8 of 20

## Schedule 2A

### Chief Executive Offices, Mailing Addresses and other Locations

| Name of Loan Party | Address of Chief Executive Office | Mailing Address (if different) | Location of Books and Records (if different) |
|---|---|---|---|
| Level 3 Homes & Design, LLC | 12055 NE Glenn Widing Dr., Ste. 202, Bldg. 3, Portland, OR 97220 | Same | Same |
| Level 3, LLC | 12055 NE Glenn Widing Dr., Ste. 202, Bldg. 3, Portland, OR 97220 | Same | Same |

### Other Leased or Owned Locations with Collateral/Books and Records
### (not already described above, if any)

| Name of Loan Party | Addresses | Owned or Leased? | Name and Address of Landlord |
|---|---|---|---|
| Level 3 Homes & Design, LLC | 4793 NE 190th Ln., Portland, OR 97230 | Leased | North American Bancard 250 Stephenson Hwy. Troy, MI 48083 |
| Level 3, LLC | 4793 NE 190th Ln., Portland, OR 97230 | Leased | North American Bancard 250 Stephenson Hwy. Troy, MI 48083 |
| Level 3 Homes & Design, LLC | 19700 SW 118th Avenue Tualatin, OR 97062 | Leased by Heirloom Inc, (subsidiary of Borrower) | Norstar Business Center West #2, LLC c/o Kiersey & McMillan PO Box 1696 Beaverton, OR 97075 |
| Level 3 Homes & Design, LLC | 15555 SW Tualatin-Sherwood Rd, Sherwood, OR 97140 | Leased by Heirloom Inc, (subsidiary of Borrower) | Sentinel Self Storage 15555 SW Tualatin-Sherwood Rd, Sherwood, OR 97140 |

## Schedule 2B

### Warehousemen, Bailees, etc.

| Name | Address/City/State/Zip Code | Description of Assets and Value | Nature of Possession[3] |
|---|---|---|---|
| Private Owner Jack Tanner | 28052 SE Hwy 212, Boring, OR 97009 | Materials/equipment | Undocumented lease of warehouse for $1,000/month |
| Landlord | | $50,000 | |

---

[3] E.g. bailee, warehouseman, customs broker, freight forwarder, carrier, consignee, etc.

DCAPDX\3102592.v5

Exhibit 4
Page 10 of 20

**Schedule 3A**

Equity Interests

| Issuer | Type of Organization | # of Shares Owned | Total Shares Outstanding | Owner | Certificate # (if uncertificated, please indicate) | Article 8 Elected? |
|---|---|---|---|---|---|---|
| Heirloom Inc | Oregon corporation | 99 | 99 | Level 3 Homes & Design, LLC | No. 6 | -- |

**Schedule 3B**

Deposit Accounts and Securities/Commodities Accounts

| Name of Loan Party | Account Number | Type of Account[4] | Name & Address of Financial Institution/Financial Intermediary |
|---|---|---|---|
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 9100078849 | Business Checking | Riverview Community Bank, 225 NE Burnside Rd., Gresham, OR 97030 |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 9100074911 | Payroll Account | Riverview Community Bank, 225 NE Burnside Rd., Gresham, OR 97030 |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 9100074908 | Operating Account | Riverview Community Bank, 225 NE Burnside Rd., Gresham, OR 97030 |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 9100074924 | Payable Account | Riverview Community Bank, 225 NE Burnside Rd., Gresham, OR 97030 |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 505691003 | Heirloom, Inc Business Checking | Chase NE Portland #940239 |

---

[4] E.g. securities/commodities account or deposit account.  If a deposit account, please note accordingly and specify if account is: concentration account, local store depository account, payroll account, account to pay taxes, etc.

## Schedule 3C

Instruments and Chattel Paper

| Name of Loan Party | Issuer of Instrument | Principal Amount of Instrument | Maturity Date |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

**Schedule 4**

Intellectual Property

| Copyrights | Owner | Filing Date | Status | Registration No. | Owned or Licensed? |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |
|  |  |  |  |  |  |

| Patents | Owner | Filing Date | Status | Registration No. | Owned or Licensed? |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |
|  |  |  |  |  |  |

| Trademarks | Owner | Filing Date | Status | Registration No. | Owned or Licensed? |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |
|  |  |  |  |  |  |

OTHER

| Owner | Description |
|---|---|
| Level 3 Homes & Design, LLC | ABN "Tiny Innovations" OR SOS registry no. 1267780-91 |
| Level 3 Homes & Design, LLC | Websites and social media accounts:<br>Website: www.tinyheirloom.com<br>Instagram: @tinyheirloom<br>Facebook: @tinyheirlooms<br>Tiny Luxury HGTV: @tinyluxuryhgtv<br>Youtube: Tiny Heirloom<br>Twitter: @TinyHeirloom<br>Pinterest: TinyHeirloom.com |

### Schedule 5

Commercial Tort Claims

| Case Name/ | Defendant | Summary of Claim | Jurisdiction of Filing | Filing Number | Amount in Controversy |
|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A |

**Schedule 6**

Motor Vehicles

| Manufacturer/Model/Year | Serial/VIN Number | State Registered |
|---|---|---|
| Ford F350 2017 | 1FT8W3BT8HED51862 | OR |
| Ford Transit 350 2019 | 1FTBW2XM1KKA11186 | OR |
| Mercedes G55 2005 | WDCYR71E95X159085 | OR |

**Schedule 7**

Insurance

| Loan Party | Type of Insurance | Insurer | Coverage Amount | Current Term Expiration |
|---|---|---|---|---|
| Level 3 Homes & Design, LLC | Workers Compensation (Heirloom Inc, (subsidiary of Borrower) | Liberty Mutual Insurance | $500,000/$500,000/$500,000 | 04/02/2020 |
| Level 3 Homes & Design, LLC | General Liability | Liberty Mutual Insurance | $1,000,000/$2,000,000 | 10/27/2019 |
| Level 3 LLC | Bond | CNA Surety | $50,0000 | 09/29/2019 |
| Level 3 Homes & Design, LLC | Auto | Liberty Mutual Insurance | $1,000,000 | 05/18/2020 |

DCAPDX\3102592.v5

Exhibit 4
Page 17 of 20

## Schedule 8

Letters of Credit

| Issuer | Amount | Related to Accounts Receivable? |
|---|---|---|
| N/A | N/A | N/A |
| | | |

**Schedule 9**

Real Property

| Loan Party | Location | Interest (leasehold or fee) | Landlord (if leasehold) | Lienholders (if fee) |
|---|---|---|---|---|
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 12055 NE Glenn Widing Dr., Portland, OR 97220 | Lease | Airport Way LLC | N/A |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 4743 NE 190th Lane Portland, OR 97330 | Lease | N. American Bancard (sublease) | N/A |
| Level 3 Homes & Design, LLC d/b/a Tiny Innovations | 19700 SW 118th Avenue Tualatin, OR 97062 | Leased by Heirloom Inc, (subsidiary of Borrower) | Norstar Business Center West #2, LLC  c/o Kiersey & McMillan PO Box 1696 Beaverton, OR 97075 | N/A |

**Schedule 10**
**Financing Matters**

| Loan Party | Creditor | Type of Credit/Financing[5] | Amount Outstanding[6] |
|---|---|---|---|
| Level 3 Homes & Design, LLC | Lance Evic | Secured Note | $282,000 + interest |
| Level 3 Homes & Design LLC | The Bleecker Family Trust | Secured Note | $182,000 + interest |
| Level 3 Homes & Design LLC | I Global LLC | MCA | $155,000.00 |
| Level 3 Homes & Design LLC | Ace Funding Source / Main St. Cash | MCA | $20,000.00 |
| Level 3 Homes & Design LLC | Biscayne Capital Funding / Ocean | MCA | $30,000.00 |
| Level 3 Homes & Design LLC | Business Merchant Funding | MCA | $30,000.00 |
| Level 3 Homes & Design LLC | Complete Business Solutions Group | MCA | $120,000.00 |
| Level 3 Homes & Design LLC | Gel Funding | MCA | $100,000.00 |
| Level 3 Homes & Design LLC | Kash Capital | MCA | $25,000.00 |
| Level 3 Homes & Design LLC | Last Chance Funding | MCA | $15,000.00 |
| Level 3 Homes & Design LLC | River Capital Partners | MCA | 36,000.00 |
| Level 3 Homes & Design LLC | Second Chance Funding | MCA | $55,000.00 |
| Level 3 Homes & Design LLC | SPG Advance Consolidation LLC | MCA | $960,000.00 |
| Level 3 Homes & Design LLC | SPG Advance LLC | MCA | $220,000.00 |
| Level 3 Homes & Design LLC | Trenen Capital Inc. | MCA | $50,000.00 |
| Level 3 Homes & Design LLC | BizFund, LLC | MCA | $80,000.00 |
| Level 3 Homes & Design LLC | iFund | MCA | $22,000.00 |
| Level 3 Homes & Design LLC | Franklin Capital Group, LLC | Lender | $1,600,000.00 + interest |
| Level 3 Homes & Design LLC | Tyson Spiess, Zachary Francis and Jason Francis | $150,000 Promissory Note dated 3/29/2019 from Stock Purchase Agreement described on Schedule 1C | Principal plus accrued interest, late fees and penalties |

---

[5] E.g. loan, letter of credit, merchant advance

[6] Amounts to be updated.

DCAPDX\3102592.v5

Exhibit 4
Page 20 of 20

**Continuing Guaranty**

Dated as of July 15, 2019

**Guaranty:** To induce Franklin Capital Group, LLC (including its successors and assigns, the "Lender") directly or through any of its branches, offices, subsidiaries, or affiliates to provide or extend certain financial accommodations and Liabilities to Level 3 Homes & Design, LLC, a Oregon limited liability company (the "Borrower"), and because each of the undersigned (each a "Guarantor") has determined that executing this Guaranty is in its interest and to its financial benefit, the Guarantor absolutely and unconditionally guaranties to the Lender the full and prompt payment of all Liabilities when due, whether at stated maturity, on demand, by acceleration or otherwise. The Guarantor's obligations under this Continuing Guaranty (this "Guaranty") shall be payable in lawful money of the United States of America.

**Liabilities:** The term "Liabilities" as used in this Guaranty means (i) all obligations, indebtedness and liabilities of the Borrower to the Lender, and any of its subsidiaries, affiliates or successors, now existing or later arising, including, without limitation, all loans, advances, interest, costs, expenses, fees, overdraft indebtedness, credit card indebtedness, letter of credit indebtedness or lease obligations, (ii) all costs and expenses, including attorneys' fees, that the Lender may pay or incur in collecting from the Borrower, the Guarantor or any other guarantor of all or any of the Liabilities and for liquidating any collateral, (iii) all monetary obligations incurred or accrued during the pendency of any bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceeding, including reasonable attorneys' fees, (iv) all "Liabilities" as defined in each of the other Loan Documents and (v) all renewals, extensions, modifications, consolidations or substitutions of any of the foregoing, whether the Borrower may be liable jointly with others or individually liable as a debtor, maker, co-maker, drawer, endorser, guarantor, surety or otherwise, and whether voluntarily or involuntarily incurred, known or unknown, due or not due, absolute or contingent, direct or indirect, liquidated or unliquidated. Notwithstanding anything to the contrary in this Guaranty, the term "Liabilities" shall not include any Excluded Swap Obligation (as hereinafter defined). "Excluded Swap Obligation" means any obligation of Borrower to Lender with respect to a "swap," as defined in Section 1a(47) of the Commodity Exchange Act ("CEA"), if and to the extent that Guarantor's guaranteeing of such swap obligation, or Guarantor's granting of a security interest or lien to secure such swap obligation, is or becomes illegal under the CEA, or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof), by virtue of Guarantor's failure for any reason to constitute an "eligible contract participant," as defined in Section 1a(18) of the CEA and the regulations thereunder, at the time such guarantee or grant of such security interest becomes effective with respect to such swap obligation. If any such swap obligation arises under a master agreement governing more than one swap, the foregoing exclusion shall apply only to those swap obligations that are attributable to swaps in respect of which Guarantor's guaranteeing of, or Guarantor's granting of a security interest or lien to secure, such swaps is or becomes illegal.

"Consulting Engagement Documents", as used in this Guaranty, means, collectively, (i) the Engagement Letter, dated as of the date hereof, between Borrower and Franklin Capital Management, LLC ("Consultant") and (ii) any guaranty, mortgage, security agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

"Loan Documents", as used in this Guaranty, means, collectively, (i) this Guaranty, (ii) the "Loan Documents" (as defined in the Promissory Note (Term Loan) dated as of the date hereof, made by Borrower in favor of Lender (the "Note")), (iii) the "Loan Documents" (as defined in the Letter Agreement, dated as of the date hereof, between Borrower and Lender) and (iv) any guaranty, mortgage, security agreement, swap agreement, other interest rate protection agreement, derivative agreement, and any other document, instrument or agreement evidencing, securing or relating to any of the foregoing, together with any and all modifications and amendments to any of the foregoing.

**Limitation:** Guarantor's obligation under this Guaranty is UNLIMITED unless expressly limited in the Additional Terms and Conditions of this Guaranty. Unless expressly limited in the Additional Terms and

Detroit_16005952_5

Exhibit 5
Page 1 of 9

Conditions of this Guaranty, there is no limit on the liability and obligations of Guarantor under this Guaranty, and this obligation (whether unlimited or limited to the extent specified in the Additional Terms and Conditions) shall include, IN ADDITION TO any limited amount of principal guaranteed, all interest on all Liabilities, and all costs and expenses of any kind incurred by the Lender in collection efforts against the Borrower and/or the Guarantor or otherwise incurred by the Lender in any way relating to the Liabilities or this Guaranty, including without limit attorneys' fees. With respect to the limitation, if any, stated in the Additional Terms and Conditions below on the amount of principal guaranteed under this Guaranty, Guarantor agrees that (a) this limitation shall not be a limitation on the amount of Borrower's Liabilities to the Lender; (b) any payments by the Guarantor shall not reduce the maximum liability of the Guarantor under this Guaranty unless written notice to that effect is actually received by the Lender at, or prior to, the time of the payment; and (c) the liability of the Guarantor to the Lender shall at all times be deemed to be the aggregate liability of the Guarantor under this Guaranty and any other guaranties previously or subsequently given to the Lender by the Guarantor and not expressly revoked, modified or invalidated in writing.

**Continued Reliance.**  The Guarantor may terminate its obligation under this Guaranty as to future Liabilities (except as provided below) by (and only by) delivering written notice of termination to the Lender and receiving from Lender written acknowledgment of delivery.  Such notice shall be effective upon the opening of business on the fifth (5th) day following written acknowledgment of delivery. If terminated, the Guarantor will continue to be liable to the Lender for any Liabilities created, assumed or committed to at the time the termination becomes effective, and all subsequent renewals, extensions, modifications and amendments of those Liabilities, until all of the same have been fully paid.  Termination by any other Guarantor or guarantor shall not release the Guarantor from its obligations under this Guaranty. The Lender has no duty to give notice of termination by any guarantor or Guarantor to any remaining Guarantors.  The Guarantor shall indemnify the Lender against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by the Lender in connection with any suit, claim or action against the Lender arising out of any modification or termination of a Borrower loan or any refusal by the Lender to extend additional credit in connection with the termination of this Guaranty.

**Security.**  As security for this Guaranty, the Guarantor pledges, assigns and grants to the Lender a continuing security interest and lien upon and right of setoff as to and in the following described property and all of its additions, substitutions, increments, proceeds and products, whether now owned or later acquired ("Collateral"):

1.  All securities and other property of the Guarantor in the custody, possession or control of the Lender (other than property held by the Lender solely in a fiduciary capacity);

2.  All property or securities declared or acknowledged by the Guarantor to constitute security for any past, present or future liability, direct or indirect, of the Guarantor to the Lender;

3.  All claims of any nature, whether now existing or later acquired, that Guarantor has against Borrower (excepting claims under a deed of trust or mortgage covering California real property), including the right of the Lender to collect and realize upon such claims; and

4.  All balances of deposit accounts of the Guarantor with the Lender ("deposit account" having the meaning given to it §9-102(a)(29) of the UCC (as defined below)).

The Guarantor agrees that no security now or later held by the Lender for the payment of any Liabilities, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the Guarantor under this Guaranty, and the Lender, in its sole discretion, without notice to the Guarantor, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the Guarantor under this Guaranty.

Detroit_16005952_5

Exhibit 5
Page 2 of 9

The Lender shall have the right at any time to apply its own debt or liability to the Guarantor in whole or partial payment of this Guaranty or other present or future liabilities of the Guarantor, direct or indirect, without any requirement for mutual maturity.

If the Guarantor fails to pay any amount owing under this Guaranty, the Lender shall have all of the rights and remedies provided by law or under any other agreement to liquidate or foreclose on and sell the Collateral, including but not limited to the rights and remedies of a secured party under the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"). These rights and remedies shall be cumulative and not exclusive and are further set forth in the Loan Documents.

For purposes of the following paragraphs and the definition of "Liabilities", "any collateral" shall include the Collateral and any other collateral securing the Liabilities.

**Action Regarding Borrower.** If any monies become available that the Lender can apply to the Liabilities, the Lender may apply them in any manner it chooses, including but not limited to applying them against Liabilities which are not covered by this Guaranty. The Lender can take any action against the Borrower, any collateral, or any other person liable for any of the Liabilities. The Lender can release the Borrower or anyone else from its liability for the Liabilities, either in whole or in part, or release any collateral, and need not perfect a security interest in any collateral. The Lender does not have to exercise any rights that it has against the Borrower or anyone else, or make any effort to realize on any collateral or right of set-off. If the Borrower requests more credit or any other benefit, the Lender may grant it and the Lender may grant renewals, extensions, modifications and amendments of any of the Liabilities and otherwise deal with the Borrower or any other person as the Lender sees fit and as if this Guaranty were not in effect. The Guarantor's obligations under this Guaranty shall not be released or affected by (a) any act or omission of the Lender, (b) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of the Borrower, or any receivership, insolvency, bankruptcy, reorganization, or other similar proceedings affecting the Borrower or any of its assets, or (c) any change in the composition or structure of the Borrower or the Guarantor, including a merger or consolidation with any other person or entity.

**Nature of Guaranty.** This Guaranty is a guaranty of payment and not of collection. The Lender can insist that the Guarantor pay immediately, and the Lender is not required to attempt to collect first from the Borrower, any collateral, or any other person liable for any of the Liabilities. The obligation of the Guarantor shall be unconditional and absolute, regardless of the invalidity, irregularity, or unenforceability of any provision of any agreement between the Borrower and the Lender by reason of bankruptcy, insolvency or other law or order of any kind or for any reason, or the existence of any defense, setoff or counterclaim which the Borrower may assert. This Guaranty shall remain effective whether the Liabilities are from time to time reduced and later increased or entirely extinguished and later reincurred.  This Guaranty shall remain effective with respect to successive transactions which shall either continue the Liabilities, increase or decrease the Liabilities, or from time to time create new Liabilities after all or any prior Liabilities have been satisfied, until this Guaranty is terminated in the manner and to the extent provided below.

**Other Guarantors.** If there is more than one Guarantor, their obligations under this Guaranty shall be joint and several. In addition, each Guarantor shall be jointly and severally liable with any other guarantor of any of the Liabilities.  Lender, in its sole discretion, may release any one or more of the Guarantors or other guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased Guarantor or other guarantor; and after that, without notice to any Guarantor, the Lender may extend or renew any or all Liabilities and may permit the Borrower to incur additional Liabilities, in each case, without affecting in any manner the unconditional obligation of the remaining Guarantors. This Guaranty is not conditioned on anyone else executing this or any other guaranty.

**Rights of Subrogation.** The Guarantor subordinates any claim of any nature that it now or later has against the Borrower to and in favor of all Liabilities and agrees not to accept payment or satisfaction of any claim that the Guarantor now or later may have against the Borrower without the prior written consent of the Lender.

Detroit_16005952_5

Exhibit 5
Page 3 of 9

Should any payment, distribution, security, or proceeds, be received by the Guarantor upon or with respect to any claim that the Guarantor now or may later have against the Borrower, the Guarantor shall immediately deliver the same to the Lender in the form received (except for endorsement or assignment by the Guarantor where required by the Lender) for application on the Liabilities, whether matured or unmatured, and until delivered the same shall be held in trust by the Guarantor as the property of the Lender. The Guarantor further agrees that if any payments to the Lender on any of the Liabilities are in whole or in part invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy act or code, state or federal law, common law or equitable doctrine, this Guaranty and the Lender's interest in any collateral remain in full force and effect (or are reinstated as the case may be) until payment in full of those amounts. Any payment is due on demand.

**Reinstatement.** Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that any payment received or credit given by the Lender in respect of the Liabilities is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the Guarantor as if the returned, disgorged or rescinded payment or credit had not been received or given by the Lender, and whether or not the Lender relied upon this payment or credit or changed its position as a consequence of it. In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the Guarantor agrees upon demand by the Lender, to execute and deliver to the Lender those documents which the Lender determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the Guarantor to do so shall not affect in any way the reinstatement or continuation. If the Guarantor does not execute and deliver to the Lender upon demand such documents, the Lender and each Lender officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the Guarantor (with full power of substitution) to execute and deliver such documents in the name and on behalf of the Guarantor.

**Waivers.** The Guarantor waives, to the extent not expressly prohibited by applicable law, any right it may have to receive notice of the following matters before the Lender enforces any of its rights: (a) the Lender's acceptance of this Guaranty, (b) any credit or other Liabilities that the Lender extends to the Borrower, (c) any presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment or notice of acceleration of any Indebtedness, any and all other notices to which the Guarantor might otherwise be entitled, and diligence in collecting any Liabilities and (d) any action that the Lender takes regarding the Borrower, anyone else, any collateral, or any of the Liabilities, which it might be entitled to by law or under any other agreement, including, without limitations, the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, and the provisions of  Section 9-611 or 9-621 of the Michigan or any other applicable Uniform Commercial Code, as the same may be amended, revised or replaced from time to time. The Lender may waive or delay enforcing any of its rights without losing them. Any waiver shall affect only the specific terms and time period stated in the waiver. No modification, waiver or amendment of this Guaranty shall be effective unless it is in writing and signed by the party against whom it is being enforced.

The Guarantor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the Guarantor under this Guaranty, and acknowledges that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the Guarantor now or later securing this Guaranty and/or the Liabilities, and acknowledges that as of the date of this Guaranty no such defense or setoff exists. The Guarantor acknowledges that the effectiveness of this Guaranty is subject to no conditions of any kind.

Detroit_16005952_5

Exhibit 5
Page 4 of 9

The Guarantor agrees that the Lender may, once or any number of times, modify the terms of any Liabilities, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Liabilities, or permit the Borrower to incur additional Liabilities, all without notice to the Guarantor and without affecting in any manner the unconditional obligation of the Guarantor under this Guaranty.

**Information.**   The Guarantor delivers this Guaranty based solely on its independent investigation of (or decision not to investigate) the financial condition of Borrower and is not relying on any information furnished by the Lender.   The Guarantor assumes full responsibility for keeping itself informed of the Borrower's financial condition and assets, and all other circumstances bearing upon the risk of nonpayment of any of the Liabilities and the nature, scope and extent of the Guarantor's risks under this Guaranty, and the Guarantor accepts the full range of risk encompassed by this Guaranty. The Guarantor represents and warrants that it (i) has not relied on any representation of the Lender as to Borrower's financial condition and assets, creditworthiness, and all other circumstances bearing upon the risk of nonpayment of any of the Liabilities and (ii) has established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The Lender has no duty to advise the Guarantor of information known to it regarding Borrower's (or any other Guarantor's or guarantor's) operations, condition, assets, liabilities, circumstances or risks, or the occurrence of any default with respect the Liabilities, or otherwise, notwithstanding any effect these facts may have upon the Guarantor's risk under this Guaranty or the Guarantor's rights against the Borrower.

**Representations by Guarantor.**   (a) As of the date of this Guaranty, each Guarantor represents that such Guarantor has not made any qualified dispositions of any of his/her/its property to (i) a trust established under the Qualified Dispositions in Trust Act (codified at MCL 700.1041 et. seq.) ("Act"), or (ii) any other asset protection trust.

Each Guarantor agrees to not make or attempt any qualified dispositions or other distribution or transfers of any of its property into a trust established under the Act, or any other asset protection trust, without obtaining the prior written consent of the Lender. Lender's consent to any such requested distribution shall be at the sole and absolute discretion of the Lender.  Any consent provided by Lender described in this paragraph shall only be applicable for property identified and disclosed in writing by a Guarantor to Lender. Lender's consent shall not be applicable to: (x) any other property of any Guarantor which is not disclosed to Lender in writing as part of the qualified disposition under the Act; or (y) any other qualified disposition of property under the Act previously attempted or attempted in the future by any Guarantor.

Each Guarantor acknowledges and agrees that if Lender does not provide its written consent to a Guarantor for a qualified or other disposition under the Act, then such disposition by the Guarantor shall not be valid under the Act with respect to Lender.

Each Guarantor agrees that such Guarantor has an obligation to disclose immediately in writing to Lender any qualified dispositions or attempted qualified dispositions to a trust under the Act and any other disposition to an asset protection trust.

Each Guarantor agrees that this Guaranty constitutes a written agreement described in the Act between a transferor and a creditor providing for and establishing the obligations of a transferor as stated in Subsection (11) of Section 5 of the Act.

Each Guarantor's failure to comply with any provisions of this section shall constitute a default, Default or Event of Default, as applicable, under the Loan Documents. The Lender shall have those rights and remedies upon the occurrence of a default, Default or Event of Default, as applicable, as set forth in each applicable Loan Document, including without limitation the right to accelerate the payment of any amounts outstanding under the Note.

The terms used in this Section (a) shall have the meaning ascribed to them in the Act, unless otherwise defined in this Guaranty.

Detroit_16005952_5

Exhibit 5
Page 5 of 9

(b) The Guarantor represents: (i) that the execution and delivery of this Guaranty and the performance of the obligations it imposes do not violate any law, conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party; (ii) that this Guaranty is a valid and binding agreement, enforceable according to its terms; and (iii) that all balance sheets, profit and loss statements, and other financial statements furnished by it to the Lender are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates. Each Guarantor, other than a natural person, further represents: (i) that it is duly organized, existing and in good standing pursuant to the laws under which it is organized; and (ii) that the execution and delivery of this Guaranty and the performance of the obligations it imposes (A) are within its powers and have been duly authorized by all necessary action of its governing body and (B) do not contravene the terms of its articles of incorporation or organization, its by-laws, or any partnership, operating or other agreement governing its affairs.

**Lending Installations.**   The Liabilities may be booked at any office, branch, subsidiary or affiliate of the Lender, as selected by the Lender. All terms of this Guaranty apply to and may be enforced by or on behalf of any such office, branch, subsidiary or affiliate of the Lender. Without limiting the rights of the Lender under applicable law, the Guarantor authorizes the Lender to apply any sums outstanding to the credit of the Guarantor with any such office, branch, subsidiary or affiliate of the Lender toward the payment of the Liabilities by the Guarantor under this Guaranty, whether or not all or any part of the Liabilities is then due.

**Notices.**   Notice from one party to another relating to this Guaranty shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address or facsimile number listed below its signature to this Guaranty by any of the following means: (a) hand delivery, (b) registered or certified mail, postage prepaid, with return receipt requested, (c) first class or express mail, postage prepaid, (d) Federal Express or like overnight courier service or (e) facsimile, telex or other wire transmission with request for assurance of receipt in a manner typical with respect to communications of that type. Notice made in accordance with this section shall be deemed delivered on receipt if delivered by hand or wire transmission, on the third business day after mailing if mailed by first class, registered or certified mail, or on the next business day after mailing or deposit with an overnight courier service if delivered by express mail or overnight courier. Notwithstanding the foregoing, notice of termination of this Guaranty shall be deemed received only upon the receipt of actual written notice by the Lender in accordance with the paragraph above labeled "Continued Reliance." Notice shall be delivered as follows:

> If to the Guarantor: at the address below its signature hereto

> If to Lender:

> > Franklin Capital Group, LLC
> > 32300 Northwestern Hwy, Suite #200
> > Farmington Hills, Michigan 48334
> > Attn: Loan Servicing
> > Phone: (248) 538-4024
> > Email: service@franklincapital.net

**Law and Judicial Forum that Apply.**   This agreement is governed by Michigan law, without regard to conflict of law principles. The Guarantor irrevocably submits to the non-exclusive jurisdiction of any United States federal court sitting in the Eastern District of Michigan or any state court in Oakland County in the State of Michigan in any action or proceeding arising out of or relating to this Guaranty, and the Guarantor irrevocably agrees that all such claims may be heard and determined in any such court and irrevocably waives any present and future objection it may have as to the venue of any action or proceeding brought in that court, or that that court is an inconvenient forum. Any suit brought by the Guarantor related to this Guaranty may only be brought in the United States federal court sitting in the Eastern District of Michigan or in a state court in Oakland County in the State of Michigan. Nothing herein shall limit the right of the Lender to bring any action or

Detroit_16005952_5

Exhibit 5
Page 6 of 9

proceeding against the Guarantor in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

**Miscellaneous.**  The Guarantor's liability under this Guaranty is independent of its liability under any other guaranty previously or subsequently executed by the Guarantor or any one of them, singularly or together with others, as to all or any part of the Liabilities, and may be enforced for the full amount of this Guaranty regardless of the Guarantor's liability under any other guaranty. This Guaranty is binding on the Guarantor's heirs, successors and assigns (including, without limitation, any debtor in possession or trustee in bankruptcy for the Guarantor), and will operate to the benefit of the Lender and its successors and assigns. The use of headings are included for the convenience of reference only and shall not limit the provisions of this Guaranty for any purpose. This Guaranty, together with each other Loan Document to which the Guarantor is a party, constitutes the entire agreement of the Guarantor and the Lender with respect to the subject matter of this Guaranty. The Guarantor acknowledges that the Lender has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Liabilities and any related obligations, including, without limit, this Guaranty, without notice to the Guarantor.  In the event any one or more provisions of this Guaranty is deemed invalid, illegal or unenforceable in any respect, the remaining provisions of this Guaranty shall continue in full force and effect as if such invalid, illegal or unenforceable provision(s) was not a part of this Guaranty. The Guarantor has knowingly and voluntarily entered into this Guaranty in good faith, and acknowledges that the terms of this Guaranty are reasonable.

**Conflict.**  The Guarantor acknowledges that Lender, its investors, principals and/or affiliates may be (a) providing debt financing, equity capital or other services (including financial advisory or consulting services) to other companies in respect of which the Guarantor may have conflicting interests regarding the transactions described herein or otherwise or (b) engaged in a broad range of transactions (including providing merchant cash advances or merchant consumer financing) that may involve interests that differ from the interests of the Guarantor.  Without limiting the foregoing, certain providers of merchant cash advances (including providers who may have provided merchant cash advances to the Borrower), or their principals, may be referral sources to the Lender and may also be investors in Lender or an affiliate of Lender. The Guarantor further acknowledges that neither Lender, its investors, principals and/or affiliates have any obligation to disclose such interests and transactions to the Guarantor by virtue of any fiduciary, advisory or agency relationship, and the Guarantor waives, to the fullest extent permitted by law, any actual or alleged conflict of interest, and any claims they may have against, Lender, its investors, principals and/or affiliates, for breach of fiduciary duty or alleged breach of fiduciary duty, and agree that the Lender, its investors, principals and or affiliates shall have no liability (whether direct or indirect) to the Guarantor  in respect of such a conflict of interest or fiduciary duty claim, or to any person alleging a conflict of interest or asserting a fiduciary duty claim on behalf of or in right of the Guarantor, including any creditors thereof.  The Guarantor further acknowledges that Lender is not a fiduciary of the Guarantor.

**Release**.  The Guarantor hereby releases the Lender, its affiliates and subsidiaries and all of their respective officers, directors, employees, shareholders, agents, attorneys and representatives as well as their respective successors and assigns from any and all claims, obligations, rights, causes of action, and liabilities, of whatever kind or nature, whether known or unknown, whether foreseen or unforeseen, arising on or before the date hereof (the "<u>Released Matters</u>").  Without limiting the generality of the foregoing, the Guarantor hereby waives the provisions of any statute or doctrine to the effect that a general release does not extend to claims which a releasing party does not know or suspect to exist in its favor at the time of executing the release, which if known by such releasing party would have materially affected the releasing party's settlement with the party being released.  The Guarantor acknowledges that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.  If the Guarantor asserts or commences any claim, counter-claim, demand, obligation, liability or cause of action in derogation of the foregoing release or challenges the enforceability of the foregoing release (in each case, a "<u>Violation</u>"), then the Guarantor  agrees to pay in addition to such other damages as any party being released may sustain as a result of such Violation, all reasonable attorneys' fees and expenses (including in-house and outside counsel) incurred by such party being released as a result of such Violation.

Detroit_16005952_5

Exhibit 5
Page 7 of 9

**Information Sharing.**   The Lender may provide, without any limitation whatsoever, any information or knowledge the Lender may have about the Guarantor or any matter relating to this Guaranty and any related documents to any of its subsidiaries or affiliates or their successors, to the Borrower, or to any one or more purchasers or potential purchasers of the Liabilities or this Guaranty or any related documents, and the Guarantor waives any right to privacy the Guarantor may have with respect to such matters. The Guarantor agrees that the Lender may without notice and at any time sell, negotiate, assign or transfer one or more interests or participations in all or any part of its rights or obligations under the documents evidencing the Liabilities or in this Guaranty to one or more purchasers whether or not related to the Lender. This Guaranty may only be modified or amended in a written instrument executed by the Lender and the Guarantor.

**Additional Terms and Conditions.**  None.

**Waiver of Jury Trial.**  Lender and the Guarantor acknowledge that the right to a trial by jury is a constitutional right that may be waived. After consulting or being given the opportunity to consult with legal counsel, the Lender and the Guarantor knowingly and voluntarily waive any right either of them have to a trial by jury in any proceeding (whether sounding in contract or tort) which is in any way connected with this Guaranty, any related agreement or the relationship established under them, or the Liabilities.

[Remainder of Page Intentionally Left Blank]

Detroit_16005952_5

Exhibit 5
Page 8 of 9

IN WITNESS WHEREOF, the undersigned have caused this Guaranty to be executed as of the date first written above.

Guarantors:

**HEIRLOOM INC**

By:_____
    Name: Jeremy Killian
    Title: President

Address:
19700 SW 118th Avenue
Portland, OR 97220
Phone: (503) 912-3696
Email: jeremy@innovatetiny.com

**LEVEL 3, LLC**

By:_____
    Name: Jeremy Killian
    Title: Sole Member

Address:
12055 NE Glenn Widing Dr., Building 3, Suite 202
Portland OR. 97220
Phone: (503) 912-3696
Email: jeremy@innovatetiny.com

**Jeremy Killian**

_____

Address:
17050 SE Rhododendron St.
Happy Valley, OR 97086
Phone: (503) 516-8347
Email: jeremy@innovatetiny.com

**Ryan Donato**

_____

Address:
298 SW 38th Loop
Gresham, OR 97080
Phone:
Email:

[Signature Page to Continuing Guaranty (Lender as SP) (16005952)]

Detroit_16005952_5

Exhibit 5
Page 9 of 9

## ASSIGNMENT AND CONVEYANCE
## AND CERTIFICATION OF RELEASE

As of July 15, 2019 (the *"Closing Date"*), FRANKLIN CAPITAL GROUP, LLC, as a Transferor ("*Transferor*") under that certain Purchase Agreement, dated as of May 31, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "*Agreement*"), does hereby sell, transfer, assign, set over and convey to FRANKLIN CAPITAL FUNDING, LLC, a Delaware limited liability company, as Purchaser ("*Purchaser*") under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of the Transferor in and to the Purchased Assets listed on the Receivable Schedule attached hereto as Exhibit A, together with the related Funding Agreements, all rights to Receivable Files and other Records, and all rights of the Transferor to agreements therein, and to receive from any third party or to take delivery of any documents which constitute a part of the Receivable File and the proceeds of any and all of the foregoing Receivable Files and all rights and obligations arising under the documents contained therein (collectively, the "*Conveyed Assets*"). The ownership of each Receivable, each Funding Agreement, the contents of the related Receivable File, and all other Conveyed Assets shall immediately and hereby does vest in the Purchaser and shall be retained and maintained, in trust, by the Transferor at the will of the Purchaser in such custodial capacity only.

Without limiting the foregoing, the Transferor hereby grants to the Purchaser a security interest in all of its right, title and interest in, to and under the Conveyed Assets, whether now existing or hereafter arising and wherever located, to secure all amounts due and owing by the Transferor to the Purchaser under the Agreement, and this Assignment and Conveyance shall constitute a security agreement under applicable law.

The Transferor confirms to the Purchaser that the representations and warranties set forth in Sections 6.01 and 6.02 of the Agreement are true and correct as of the date hereof.

[Signature page follows]

Exhibit 6
Page 1 of 3

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

FRANKLIN CAPITAL GROUP, LLC
(the Transferor)

By:
Name: Shaya Baum
Title:  Partner

Detroit_16178207_2

Exhibit 6
Page 2 of 3

EXHIBIT A

**RECEIVABLE SCHEDULE**

$1,600,000 term loan made by Franklin Capital Group, LLC to Level 3 Homes & Design, LLC, evidenced by that certain Promissory Note (Term Loan), dated as of July 15, 2019, made by Level 3 Homes & Design, LLC in favor of Franklin Capital Group, LLC.

Warrant, issued as of July 15, 2019 by Level 3 Homes & Design, LLC to Franklin Capital Group, LLC, for the right to purchase 10% of the fully diluted equity of Level 3 Homes & Design, LLC for an exercise price of $1.00 (subject to the terms and conditions set forth therein).



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-1**

| Oregon Secretary of State | |
|---|---|
| Filing Number: | 91635708 |
| Filing Date: | Aug 6, 2018 08:08 AM |
| Filed Electronically | |

---

*Action:* Initial Filing

---

*Debtor -*
Organization Name: LEVEL 3 HOMES & DESIGN, LLC
Address 1: 21948 NE GLISAN STREET
City: GRESHAM
State: OR, USA
Zip Code: 97030

---

*Debtor -*
Organization Name: LEVEL 3, LLC
Address 1: 21948 NE GLISAN STREET
City: GRESHAM
State: OR, USA
Zip Code: 97030

---

*Debtor -*
Individuals Name: JEREMY P KILLIAN
Address 1: 17050 SE RHODODENDRON STREET
City: HAPPY VALLEY
State: OR, USA
Zip Code: 97086

---

*Debtor -*
Individuals Name: RYAN M DONATO
Address 1: 298 SW 38TH LOOP
City: GRESHAM
State: OR, USA
Zip Code: 97080

---

*Secured Party -*
Organization Name: Orange Advance LLC
Address 1: 140 32nd St. #316
City: Brooklyn
State: NY, USA
Zip Code: 11232

---

*Collateral -*
All accounts receivable, instruments, contract rights and other rights to receive the payment of money, credit card processing, patents, chattel paper, licenses, leases and general intangibles, whether now owned or hereafter acquired or arising, and all of Debtor's books and records relating to any of the foregoing.

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr, Springfield, IL 62703

*Optional Filer Reference Data*
150300816

---

Exhibit 7
Page 1 of 44

FILED: JUL 17, 2019 03:58 PM
OREGON SECRETARY OF STATE

LIEN NO. 91635708-1

## UCC FINANCING STAT    UCC
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed in: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91635708 08/06/2018

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 0

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:     AND   Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change – provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ORANGE ADVANCE LLC | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FRANKLIN CAPITAL GROUP, LLC | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ORANGE ADVANCE LLC | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)

1668 83533

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 2 of 44



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or  97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-3**

Oregon Secretary of State
Filing Number:            91635708-2
Filing Date:       Oct 22, 2019 09:31 AM

Filed Electronically

---

*Action:* Assignment

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI, USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor: LEVEL 3 HOMES & DESIGN, LLC - NJR/ASW (15492-17)   171683414

Exhibit 7
Page 3 of 44



**UCC-1**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                    91703696
Filing Date:        Oct 23, 2018 08:50 AM

Filed Electronically

---

*Action:* Initial Filing

*Debtor -*
Organization Name:  LEVEL 3 HOMES AND DESIGN LLC
Address 1:  12055 NE GLENN WIDING BLDG 3 SUITE 202
City:  PORTLAND
State:  OR, USA
Zip Code:  97220

*Debtor -*
Organization Name:  TINY INNOVATIONS LLC
Address 1:  12055 NE GLENN WIDING BLDG 3 SUITE 202
City:  PORTLAND
State:  OR, USA
Zip Code:  97220

*Debtor -*
Individuals Name:  JEREMY P KILLIAN
Address 1:  17050 SE RHODODENDRON STREET
City:  HAPPY VALLEY
State:  OR, USA
Zip Code:  97086

*Secured Party -*
Organization Name:  COMPLETE BUSINESS SOLUTIONS GROUP
Address 1:  22 N 3RD STREET
City:  PHILADELPHIA
State:  PA, USA
Zip Code:  19106

*Collateral -*
Exhibit A Collateral:
The collateral includes the following property that borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: (i) any of all amounts owing to borrower not or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions and (ii) all other tangible and intangible personal property, including, but not limited to (a) inventory, (b) equipment, (c) investment property, including certificated and uncertified securities, securities accounts , security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health-care insurance receivables (i) deposit accounts, (j) commercial tort claims, (k) general tangibles, including payment intangibles and software and (l) as extracted collateral as such terms may from time to time be define in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

---

Exhibit 7
Page 4 of 44

FILED: JUL 17, 2019 03:57 PM
OREGON SECRETARY OF STATE

LIEN NO. 91703696-1

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91703696 10/23/2018

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND    Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FRANKLIN CAPITAL GROUP, LLC | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)

1668 83820

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 5 of 44

 **UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                91703696-2
Filing Date:        Oct 22, 2019 09:31 AM

Filed Electronically

---

*Action:* Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor: LEVEL 3 HOMES AND DESIGN LLC - NJR/ASW
(15492-17)   171683708

---

Exhibit 7
Page 6 of 44



**UCC-1**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                          91791332
Filing Date:              Feb 1, 2019 09:15 AM

Filed Electronically

---

*Action:*  Initial Filing

*Debtor -*
Organization Name:  LEVEL 3 HOMES & DESIGN, LLC
Address 1:  21948 NE GLISAN STREET
City:  GRESHAM
State:  OR,  USA
Zip Code:  97030

*Debtor -*
Organization Name:  LEVEL 3, LLC
Address 1:  21948 NE GLISAN STREET
City:  GRESHAM
State:  OR,  USA
Zip Code:  97030

*Debtor -*
Individuals Name:  JEREMY P KILLIAN
Address 1:  17050 SE RHODODENDRON STREET
City:  HAPPY VALLEY
State:  OR,  USA
Zip Code:  97086

*Debtor -*
Individuals Name:  RYAN M DONATO
Address 1:  298 SW 38TH LOOP
City:  GRESHAM
State:  OR,  USA
Zip Code:  97080

*Secured Party -*
Organization Name:  RIVER CAPITAL PARTNERS, LLC
Address 1:  140 32nd St. #316
City:  Brooklyn
State:  NY,  USA
Zip Code:  11232

*Collateral -*
All accounts receivable, instruments, contract rights and other rights to receive the payment of money, credit card processing, patents, chattel paper, licenses, leases and general intangibles, whether now owned or hereafter acquired or arising, and all of Debtor's books and records relating to any of the foregoing.

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Optional Filer Reference Data*
158538663

Exhibit 7
Page 7 of 44

FILED: JUL 17, 2019 03:55 PM
OREGON SECRETARY OF STATE

LIEN NO: 91791332-1

## UCC FINANCING STATEMEN
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FI**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

1668 84016
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 91791332 02/01/2019 | Filer: *attach* Amendment Addendum (Form UCC3Ad) *and* provide Debtor's name in Item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, *and* address of Assignee in item 7c *and* name of Assignor in item 9
For partial assignment, complete items 7 and 9 *and* also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check *one* of these two boxes:
☐ This Change affects ☐ Debtor *or* ☐ Secured Party of record

**AND** Check *one* of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; *and* item 7a or 7b *and* item 7c
☐ ADD name: Complete item 7a or 7b, *and* item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only *one* name (6a or 6b)

| 6a. ORGANIZATION'S NAME | RIVER CAPITAL PARTNERS, LLC | | | |
|---|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only *one* name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | FRANKLIN CAPITAL GROUP, LLC |
|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | |
| INDIVIDUAL'S FIRST PERSONAL NAME | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check *one* of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only *one* name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | RIVER CAPITAL PARTNERS, LLC | | | |
|---|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA: Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17) | 1668 84016 |
|---|---|

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 8 of 44



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-3**

Oregon Secretary of State
Filing Number:          91791332-2
Filing Date:       Oct 22, 2019 09:31 AM

Filed Electronically

---

*Action:* Assignment

---

*Secured Party -*
Organization Name: FRANKLIN CAPITAL FUNDING, LLC
Address 1: 32300 NORTHWESTERN HWY.
City: FARMINGTON HILLS
State: MI, USA
Zip Code: 48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN, LLC-ASW/NJR (15492-17)
171683918

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)



### STATE OF OREGON
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or  97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-1**

Oregon Secretary of State
Filing Number:                              91792813
Filing Date:            Feb 4, 2019 10:56 AM

Filed Electronically

---

*Action:*  Initial Filing

---

*Debtor -*
Organization Name:  Level 3 Homes & Design LLC
Address 1:  12055 NE Glenn Widing Dr, Ste 202
City:  Portland
State:  OR,  USA
Zip Code:  97220

---

*Debtor -*
Organization Name:  Level 3 LLC
Address 1:  12055 NE Glenn Widing Dr, Ste 202
City:  Portland
State:  OR,  USA
Zip Code:  97220

---

*Debtor -*
Organization Name:  Tiny Innovations
Address 1:  12055 NE Glenn Widing Dr, Ste 202
City:  Portland
State:  OR,  USA
Zip Code:  97220

---

*Secured Party -*
Organization Name:  Ace Funding Source LLC
Address 1:  90 State St. STE 700 Office 40
City:  Albany
State:  NY,  USA
Zip Code:  12207

---

*Collateral -*
 ASSETS INCLUDING PROCEEDS AND PRODUCTS
 ACCOUNT(S) INCLUDING PROCEEDS AND PRODUCTS
 CHATTEL PAPER INCLUDING PROCEEDS AND PRODUCTS
 INVENTORY INCLUDING PROCEEDS AND PRODUCTS
 EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS
 NEGOTIABLE INSTRUMENTS INCLUDING PROCEEDS AND PRODUCTS
 GENERAL INTANGIBLE(S) INCLUDING PROCEEDS AND PRODUCTS

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Optional Filer Reference Data*
  158651294

---

Exhibit 7
Page 10 of 44

FILED: JUL 17, 2019 03:53 PM
OREGON SECRETARY OF STATE

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT F**
CSC   1-800-858-5294    UCC    LIEN NO.  91792813-1

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Corporation Service Company
1127 Broadway St NE
Suite 310            Filed In: Oregon
Salem, OR 97301            (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91792813 02/04/2019

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    **AND** Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | |
|---|---|---|
| ACE FUNDING SOURCE LLC | | |

OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | |
|---|---|---|
| FRANKLIN CAPITAL GROUP, LLC | | |

OR | 7b. INDIVIDUAL'S SURNAME | | |

| INDIVIDUAL'S FIRST PERSONAL NAME | | |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| ACE FUNDING SOURCE LLC | | |

OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)

1668 84226

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 11 of 44



**UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                91792813-2
Filing Date:        Oct 22, 2019 09:31 AM

Filed Electronically

---

*Action:* Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN, LLC-ASW/NJR (15492-17)
171684058

---

Exhibit 7
Page 12 of 44

FILED: JUL 17, 2019 03:50 PM
OREGON SECRETARY OF STATE

LIEN NO. 91793856-1

## UCC FINANCING STATEMEN

FOLLOW INSTRUCTIONS                                              UCC

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:**

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301                         Filed in: Oregon
                                         (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91793856 02/04/2019

**1b.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: *attach* Amendment Addendum (Form UCC3Ad) *and* provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, *and* address of Assignee in item 7c *and* name of Assignor in item 9
For partial assignment, complete items 7 and 9 *and* also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check *one* of these two boxes:                                    AND   Check *one* of these three boxes to:

This Change affects ☐ Debtor *or* ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; *and* item 7a or 7b *and* item 7c | ☐ ADD name: Complete item 7a or 7b, *and* item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only *one* name (6a or 6b)

| 6a. ORGANIZATION'S NAME SECOND CHANCE FUNDING | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only *one* name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check *one* of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only *one* name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME SECOND CHANCE FUNDING | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOME & DESIGN - ASW/NJR (15492-17)                    1668 84898

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 13 of 44

FILED: MAR 20, 2019 05:00 PM
OREGON SECRETARY OF STATE

UCC

LIEN NO. 91035615    LEVEL 3 HOMES & DESI

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME LEVEL 3 HOMES & DESIGN, LLC | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 21948 E. GILSAN ST. | CITY GRESHAM | STATE OR | POSTAL CODE 97030 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:
(a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
(b) all present and future insurance claims relating to any of the above;
(c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: ASW (15492-17)

1611 35567

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit 7
Page 14 of 44

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

LEVEL 3 HOMES & DESIGN, LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

controls possession by documents or otherwise; and
(d) all present and future books, records, and data of the Debtor relating to any of the above; and
(e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 15 of 44

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

LEVEL 3 HOMES & DESIGN, LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
of any of the above and cash and other property which were proceeds of any of the above and are recovered by a
bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more
specific or narrower type of that collateral.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 16 of 44

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
LEVEL 3 HOMES & DESIGN, LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY; DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 17 of 44

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
LEVEL 3 HOMES & DESIGN, LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
DEBTOR, IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF,
AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING
STATEMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD
PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION
OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE

13. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the
REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 18 of 44

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| LEVEL 3 HOMES & DESIGN, LLC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: |
|---|---|
| | ☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 19 of 44



**STATE OF OREGON**

Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-3**

Oregon Secretary of State
Filing Number:               91835615-1
Filing Date:        Oct 22, 2019 09:31 AM

Filed Electronically

---

*Action:* Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor: LEVEL 3 HOMES & DESIGN, LLC - :NJR/ASW (15492-17) BH   171491089

Exhibit 7
Page 20 of 44

FILED: JUL 17, 2019 03:49 PM
OREGON SECRETARY OF STATE

LIEN NO. 91837451-1

**UCC FINANCING STATE**
FOLLOW INSTRUCTIONS

UCC

A. NAME & PHONE OF CONTACT AT
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
91837451 03/21/2019

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME  BIZFUND, LLC

OR
6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME  FRANKLIN CAPITAL GROUP, LLC

OR
7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS  32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME  BIZFUND, LLC

OR
9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: Debtor: LEVEL 3 HOMES & DESIGN, LLC dba LEVEL 3 HOMES & DESIGN - ASW/NJR (15492-17)   1668 85143

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 21 of 44



**UCC-1**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                91836634
Filing Date:        Mar 21, 2019 02:50 PM

Filed Electronically

---

*Action:* Initial Filing

---

*Debtor -*
Organization Name: LEVEL 3 HOMES & DESIGN, LLC
Address 1: 12055 NE GLENN WINDING DR STE. 202
City: PORTLAND
State: OR, USA
Zip Code: 97220

---

*Debtor -*
Individuals Name: JEREMY P KILLIAN
Address 1: 17050 SE RHODODENDRON STREET
City: HAPPY VALLEY
State: OR, USA
Zip Code: 97086

---

*Secured Party -*
Organization Name: KASH CAPITAL
Address 1: 1022 Avenue M
City: Brooklyn
State: NY, USA
Zip Code: 11230

---

*Collateral -*
All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCE IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

---

*Filer Information*
OR-0-69046310

Exhibit 7
Page 22 of 44

FILED: JUL 17, 2019 03:52 PM
OREGON SECRETARY OF STATE

LIEN NO.: 91836634-1

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

UCC

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91836634 03/21/2019

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
☐ This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KASH CAPITAL | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FRANKLIN CAPITAL GROUP, LLC | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KASH CAPITAL | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)

1668 84401

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 23 of 44



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-3**

Oregon Secretary of State
Filing Number:                91836634-2
Filing Date:        Oct 22, 2019 09:30 AM

Filed Electronically

---

*Action:* Assignment

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN, LLC-ASW/NJR (15492-17)
171684268

Exhibit 7
Page 24 of 44

FILED: MAR 22, 2019 05:00 PM
OREGON SECRETARY OF STATE

UCC    LIEN NO. 91838932    LEVEL 3 HOMES AND DE

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301
Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LEVEL 3 HOMES AND DESIGN LLC | | | | |
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **1c. MAILING ADDRESS** 21948 NORTH EAST GILSAN ST | CITY GRESHAM | | STATE OR | POSTAL CODE 97030 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| **2b. INDIVIDUAL'S SURNAME** KILLIAN | FIRST PERSONAL NAME JEREMY | ADDITIONAL NAME(S)/INITIAL(S) PAUL | | SUFFIX |
| **2c. MAILING ADDRESS** 17050 RHODODENDRON ST | CITY HAPPY VALLEY | | STATE OR | POSTAL CODE 97086 | COUNTRY USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GEL FUNDING LLC | | | | |
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **3c. MAILING ADDRESS** 5308 13 ave suite 324 | CITY BROOKLYN | | STATE NY | POSTAL CODE 11219 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
1613 87903

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit 7
Page 25 of 44

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
LEVEL 3 HOMES AND DESIGN LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME  RYAN MICHAEL DONATO

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS 298 SW 38TH LOOP | CITY GRESHAM | STATE OR | POSTAL CODE 97080 | COUNTRY USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY --- UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 26 of 44

FILED: JUL 17, 2019 03:51 PM
OREGON SECRETARY OF STATE

LIEN NO.  91838932-1

## UCC FINANCING STATEM

FOLLOW INSTRUCTIONS

UCC

**A. NAME & PHONE OF CONTACT AT FIL**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
| 91838932 03/22/2019 | | (or recorded) in the REAL ESTATE RECORDS |
| | | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND    Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME GEL FUNDING LLC | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME GEL FUNDING LLC | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA: Debtor: LEVEL 3 HOMES & DESIGN LLC - ASW/NJR (15492-17)    1668 84576

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 27 of 44

FILED: MAR 22, 2019 05:00 PM
OREGON SECRETARY OF STATE

UCC    LIEN NO.  91838932    LEVEL 3 HOMES AND DE

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  LEVEL 3 HOMES AND DESIGN LLC | | | | |
|---|---|---|---|---|
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 21948 NORTH EAST GILSAN ST | CITY  GRESHAM | STATE  OR | POSTAL CODE  97030 | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S SURNAME  KILLIAN | FIRST PERSONAL NAME  JEREMY | | ADDITIONAL NAME(S)/INITIAL(S)  PAUL | SUFFIX |
| 2c. MAILING ADDRESS 17050 RHODODENDRON ST | CITY  HAPPY VALLEY | STATE  OR | POSTAL CODE  97086 | COUNTRY  USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME GEL FUNDING LLC | | | | |
|---|---|---|---|---|
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 5308 13 ave suite 324 | CITY  BROOKLYN | STATE  NY | POSTAL CODE  11219 | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:
Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts: I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative | | |
|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | 1613 87903 |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit 7
Page 28 of 44

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**LEVEL 3 HOMES AND DESIGN LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME    RYAN MICHAEL DONATO

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS 298 SW 38TH LOOP | CITY GRESHAM | STATE OR | POSTAL CODE 97080 | COUNTRY USA |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 29 of 44



**UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:              91838932-2
Filing Date:        Oct 22, 2019 09:30 AM

Filed Electronically

---

*Action:*  Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN LLC-ASW/NJR (15492-17)
171684506

Exhibit 7
Page 30 of 44



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-1**

Oregon Secretary of State
Filing Number:                  91937947
Filing Date:        Jun 24, 2019 01:52 PM

Filed Electronically

---

*Action:* Initial Filing

---

*Debtor -*
Organization Name:  LEVEL 3 HOMES & DESIGN, LLC
Address 1:  320 N. Main Street
Address 2:  Suite # 207
City:  Gresham
State:  OR,  USA
Zip Code:  97030

---

*Debtor -*
Organization Name:  TINY INNOVATIONS LLC
Address 1:  12055 NE GLENN WIDING BLDG 3 SUITE 202
City:  PORTLAND
State:  OR,  USA
Zip Code:  97220

---

*Debtor -*
Individuals Name:  JEREMY P KILLIAN
Address 1:  17050 SE RHODODENDRON STREET
City:  HAPPY VALLEY
State:  OR,  USA
Zip Code:  97086

---

*Secured Party -*
Organization Name:  LIG INTERNATIONAL LLC
Address 1:  2801 florida ave
Address 2:  suite 12
City:  miami
State:  FL,  USA
Zip Code:  33133

---

*Collateral -*
Exhibit A Collateral:
The collateral includes the following property that borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: (i) any of all amounts owing to borrower not or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions and (ii) all other tangible and intangible personal property, including, but not limited to (a) inventory, (b) equipment, (c) investment property, including certificated and uncertified securities, securities accounts , security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health-care insurance receivables (i) deposit accounts, (j) commercial tort claims, (k) general tangibles, including payment intangibles and software and (l) as extracted collateral as such terms may from time to time be define in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

---

Exhibit 7
Page 31 of 44

FILED: JUL 17, 2019 04:00 PM
OREGON SECRETARY OF STATE

LIEN NO. 91937947-1

## UCC FINANCING STATEM

FOLLOW INSTRUCTIONS                    UCC

A. NAME & PHONE OF CONTACT AT FIL_____(optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
91937947 06/24/2019

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination
Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is
continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:                    AND Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete
item 6a or 6b; and item 7a or 7b; and item 7c    ☐ ADD name: Complete item
7a or 7b, and item 7c    ☐ DELETE name: Give record name
to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME    LIG INTERNATIONAL LLC

OR  6b. INDIVIDUAL'S SURNAME    | FIRST PERSONAL NAME    | ADDITIONAL NAME(S)/INITIAL(S)    | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME    FRANKLIN CAPITAL GROUP, LLC

OR  7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    | SUFFIX

7c. MAILING ADDRESS  32300 NORTHWESTERN HWY.    | CITY  FARMINGTON HILLS    | STATE  MI    | POSTAL CODE  48334    | COUNTRY  USA

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME  LIG INTERNATIONAL LLC

OR  9b. INDIVIDUAL'S SURNAME    | FIRST PERSONAL NAME    | ADDITIONAL NAME(S)/INITIAL(S)    | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)    1668 82350

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 32 of 44



**UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or  97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                   91937947-2
Filing Date:          Oct 22, 2019 09:30 AM

Filed Electronically

---

*Action:*  Assignment

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN, LLC-ASW/NJR (15492-17)
171684779

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

---

Exhibit 7
Page 33 of 44



**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

**UCC-1**

Oregon Secretary of State
Filing Number:                91938377
Filing Date:        Jun 24, 2019 02:24 PM

Filed Electronically

---

*Action:* Initial Filing

---

*Debtor -*
Organization Name: LEVEL 3 HOMES & DESIGN, LLC
Address 1: 12055 NE GLENN WINDING DR
Address 2: STE. 202
City: PORTLAND
State: OR, USA
Zip Code: 97220

---

*Debtor -*
Organization Name: Tiny Innovations llc
Address 1: 12055 NE Glenn Widing Dr
Address 2: BLDG 3 SUITE 202
City: PORTLAND
State: OR, USA
Zip Code: 97220

---

*Debtor -*
Organization Name: Level 3 LLC
Address 1: 12055 NE Glenn Widing Dr
Address 2: STE 202
City: PORTLAND
State: OR, USA
Zip Code: 97220

---

*Debtor -*
Individuals Name: JEREMY P KILLIAN
Address 1: 17050 SE RHODODENDRON STREET
City: HAPPY VALLEY
State: OR, USA
Zip Code: 97086

---

*Secured Party -*
Organization Name: biscayne capital funding
Address 1: 141 ne 3rd ave
Address 2: 5th floor
City: MIAMI
State: FL, USA
Zip Code: 33132

---

Exhibit 7
Page 34 of 44

*Collateral -*

All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets:
a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. Notice Pursuant to an agreement between Debtor and Secured Party, Debtor has agreed not to further encumber the collateral described herein, the further encumbering of which may constitute the tortious interference with the Secured Party's right by such encumbrancer in the event that any entity is granted a security interest in the Debtor's accounts, chattel paper or general intangibles contrary to the above, the Secured Party asserts a claim to any proceeds thereof received by such entity.

Exhibit 7
Page 35 of 44

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

FILED: JUL 17, 2019 03:59 PM
OREGON SECRETARY OF STATE

LIEN NO. 91938377-1

**A. NAME & PHONE OF CONTACT**
CSC   1-800-858-5294   UCC

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
91938377 06/24/2019

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: ☐ This Change affects ☐ Debtor or ☐ Secured Party of record    AND   Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** BISCAYNE CAPITAL FUNDING, LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7c. MAILING ADDRESS** 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** BISCAYNE CAPITAL FUNDING, LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: LEVEL 3 HOMES & DESIGN, LLC - ASW/NJR (15492-17)

1668 82518

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit 7
Page 36 of 44



**UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or 97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:          91938377-2
Filing Date:          Oct 22, 2019 09:30 AM

Filed Electronically

---

*Action:* Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

*Optional Filer Reference Data*
Debtor:LEVEL 3 HOMES & DESIGN, LLC-ASW/NJR (15492-17)
171684933

Exhibit 7
Page 37 of 44

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

FILED: JUL 17, 2019 04:02 PM
OREGON SECRETARY OF STATE

LIEN NO. 91981872                HEIRLOOM INC

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HEIRLOOM INC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 12055 NE GLENN WIDING DR., STE. 202, BLDG 3 | CITY PORTLAND | STATE OR | POSTAL CODE 97220 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All personal property of the Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

a) all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, Farm Products, Fixtures, Goods, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights (whether or not given in support of Accounts), Software, as defined below (words and phrases used herein and not otherwise specifically defined herein shall have the respective meanings assigned to such terms as such terms are defined in the Uniform Commercial Code of the State of Michigan, as in effect from time to time (the "UCC"), present and future, including but not limited to any items listed on Schedule 1 attached hereto, if any;
b) all present and future insurance claims relating to any of the above;
c) all Goods, Instruments (including, without limit, promissory notes), Documents (including, without limit, negotiable Documents), policies and certificates of insurance, Deposit Accounts, and money or other property (except real property

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:** ASW/NJR (15492-17)

1667 41482

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit 7
Page 38 of 44

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| HEIRLOOM INC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later
controls possession by documents or otherwise;
   d) all present and future books, records, and data of the Debtor relating to any of the above; and
   e) all present and future accessions, additions and attachments to, proceeds, parts, products, replacement,
substitutions, Supporting Obligations and rights arising out of, any of the above, including but not limited to stock rights,
subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 39 of 44

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | |
|---|---|
| HEIRLOOM INC | |
| | |
| OR | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) |  SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by the Debtor.

In this description of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT: |
|---|---|
| | ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

Exhibit 7
Page 40 of 44

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**

HEIRLOOM INC

OR **9b. INDIVIDUAL'S SURNAME**

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR **10b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u> ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR **11b. INDIVIDUAL'S SURNAME**          FIRST PERSONAL NAME          ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT, WHICH INCLUDES ALL AFTER ACQUIRED PROPERTY, INCLUDING ALL OF DEBTOR'S ACCOUNTS, FUTURE ACCOUNTS, CONTRACT RIGHTS, FUTURE SALES, RECEIPTS AND OTHER OBLIGATIONS. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut     ☐ covers as-extracted collateral     ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16. Description of real estate:**

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 41 of 44

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| HEIRLOOM INC |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH
DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF,
AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING
STATMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD
PARTY. DEBTOR HAS ALSO AGREED TO HOLD IN TRUST FOR SECURED PARTY ALL PAYMENTS RECEIVED IN
CONNECTION WITH SECURED PARTY'S COLLATERAL, AND FROM THE SALE, LEASE OR OTHER DISPOSITION

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

Exhibit 7

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
HEIRLOOM INC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
OF SUCH COLLATERAL ANY ATTEMPT BY A THIRD PARTY TO EXERCISE DOMINION OR CONTROL OVER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT WOULD CONSTITUTE CONVERSION OF SECURED PARTY'S COLLATERAL.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Exhibit 7
Page 43 of 44



**UCC-3**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or  97310-1327
(503) 986-2200
FilingInOregon.com

Oregon Secretary of State
Filing Number:                    91981872-1
Filing Date:          Oct 22, 2019 09:31 AM


Filed Electronically

---

*Action:*  Assignment

---

*Secured Party -*
Organization Name:  FRANKLIN CAPITAL FUNDING, LLC
Address 1:  32300 NORTHWESTERN HWY.
City:  FARMINGTON HILLS
State:  MI,  USA
Zip Code:  48334

---

*Filer Information*
Corporation Service Company, 801 Adlai Stevenson Dr,
Springfield, IL 62703

*Optional Filer Reference Data*
Debtor:HEIRLOOM INC-:ASW/NJR (15492-17) BH    171491236

*Filer Authorization*
FRANKLIN CAPITAL GROUP, LLC  (Secured Party)

Exhibit 7
Page 44 of 44

October 28, 2019

Level 3 Homes & Design, LLC
12055 NE Glenn Widing Dr., Suite 202
Portland, OR 97220
Attention: Jeremy Killian and Ryan Donato

Re:   FINANCING ARRANGEMENTS AMONG FRANKLIN CAPITAL FUNDING, LLC
("LENDER") (SUCCESSOR BY ASSIGNMENT TO FRANKLIN CAPITAL GROUP,
LLC), LEVEL 3 HOMES & DESIGN, LLC ("BORROWER"), AND LEVEL 3, LLC,
HEIRLOOM INC., JEREMY KILLIAN AND RYAN DONATO (COLLECTIVELY,
"GUARANTORS")

Dear Messrs. Killian and Donato:

Please refer to any and all documents, instruments, and agreements executed in connection with
the financing arrangements from Lender to Borrower and Guarantors (collectively, the "Loan
Documents"). All amounts due from Borrower to Lender, whether now or in the future,
contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest,
inside and outside counsel fees, audit fees, costs, expenses and any and all other charges
provided for in the Loan Documents are identified collectively as the "Liabilities." All
capitalized terms not defined in this letter have the meanings set forth in the Loan Documents,
including that certain Letter Agreement, dated as of July 15, 2019, among Borrower, Franklin
Capital Group, LLC and Lender (the "Letter Agreement").

As of October 17, 2019 the Liabilities include, but are not limited to, the following:

| Loans (original note amount and date) | Principal | Interest |
|---|---|---|
| **Promissory Note (Term Loan)** ($1,600,000; 7/15/19) | $1,570,013.77 | $28,783.59 |

The amounts referenced above are exclusive of interest accruing after October 17, 2019, and any
costs, and expenses (including, but not limited to, inside and outside counsel fees), which
amounts shall be immediately due and payable to Lender upon demand.

It has come to our attention that several Events of Default exist under the Loan Documents,
including, but not limited to, the following:

   (a) Borrower is delinquent with respect to payment of both state and federal taxes; and

Detroit_16347805_1

Exhibit 8
Page 1 of 3

(b) Borrower is delinquent with respect to various reporting requirements under Section 4 of the Letter Agreement, including but not limited to the requirements to provide monthly financial statements, monthly accounts receivable and accounts payable agings and monthly inventory reports.

The Term Loan is a term obligation. For the reasons outlined above, Lender accelerates the Term Loan and demands payment in full of all of the Liabilities. By copy of this letter demand for payment of the Liabilities is also made of Guarantors.

Lender's acceptance of any payment of the Liabilities after the date of this letter is not a waiver of any defaults.

Lender anticipates that discussions addressing the Liabilities may take place in the future. During the course of such discussions, Lender, Borrower and Guarantors may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact and absent an express written waiver by Lender, Lender will not be bound by an agreement on any individual issues unless and until an agreement is reached and reduced to writing and signed by Borrower, Guarantors and Lender.

Please contact me at your earliest convenience to arrange for the payment in full of all of the Liabilities.

Lender reserves all of its rights and remedies under the Loan Documents and applicable law, any or all of which rights and remedies may be exercised by Lender without further notice. Lender's failure to exercise any such right or remedy shall not be construed as a waiver or modification of those rights or as an offer of forbearance. Nothing in this letter shall constitute a waiver of any default. Lender's forbearance from taking action to collect the Liabilities is from day to day in Lender's sole discretion.

Very truly yours,

**FRANKLIN CAPITAL FUNDING, LLC**

By: _____
       Brian R. Trumbauer, Its Attorney
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
(313) 259-7777

cc:    Level 3, LLC
       12055 NE Glenn Widing Dr.
       Building 3, Suite 202
       Portland, OR 97220

2

Heirloom Inc.
19700 SW 118th Avenue
Portland, OR 97220

Jeremy Killian
17050 SE Rhododendron St.
Happy Valley, OR 97086

Ryan Donato
298 SW 38th Loop
Gresham, OR 97080

Franklin Capital Funding, LLC
32300 Northwestern Hwy, Suite #200
Farmington Hills, MI 48334
Attention: Shaya Baum

3

Detroit_16347805_1

Exhibit 8
Page 3 of 3